580 A.2d 1374

**Harvey Lee KEECH and Suzanne M. Keech, Individually and as Parents and Natural Guardians of Daniel Keech, a Minor, Appellants,**

**v.**

**MEAD JOHNSON AND COMPANY, Bristol–Myers U.S. Pharmaceutical and Nutritional Group, Mead Johnson Nutritionals, a/k/a Mead Johnson Nutritional, a/k/a Mead Johnson Nutritional Division, a/k/a Mead Johnson Nutritionals Division, a/k/a Mead Johnson and Company, a/k/a Bristol–Myers Company and Bristol–Myers Company and Donald S. Schwartz, M.D. and Joan M. Magee, M.D. and Donald S. Schwartz, M.D. and Joan M. Magee, M.D., a Partnership, a/k/a Schwartz and Magee, a Partnership, Appellees.**

Superior Court of Pennsylvania.

Argued June 12, 1990.

Filed Oct. 12, 1990.

Robin T. Locke, Philadelphia, for appellants.

William D. Dienna, Norristown, for Magee, appellee.

Before BECK, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This case involves an appeal from the order of the Court of Common Pleas of Philadelphia County sustaining the preliminary objections in the nature of a demurrer of the defendant, Joan M. Magee, M.D. Plaintiffs/appellants are Harvey Lee Keech and Suzanne M. Keech, individually and as parents and guardians of Daniel Keech, a minor. We affirm.

"As is our function upon an appeal from a decision of the court below sustaining preliminary objections in the nature of a demurrer, we must accept as true every relevant fact sufficiently averred in the plaintiffs' complaint together with every inference favorable to the non-moving party which is fairly deducible therefrom." *Ganassi v. Buchanan Ingersoll, P.C.*, 373 Pa.Super. 9, 11, 540 A.2d 272, 273 (1988) (Citation omitted).

The record indicates that a praecipe for the issuance of a writ of summons was filed on May 18, 1988, with separate

service made upon "Schwartz and Magee, a partnership", "Joan M. Magee, M.D." and "Donald S. Schwartz, M.D." All summonses were received by Doctor Schwartz at the same address, and, as is herein relevant, as to the "Joan M. Magee, M.D." summons, the face sheet completed by the deputy sheriff reveals that service was made upon "Dr. Donald Swartz [sic] M.D. Partner". Also, the caption of the summons and the address to which the writ had to be served named as individual defendants "Donald S. Schwartz, M.D., Joan M. Magee, M.D. and Donald S. Schwartz, M.D. and Joan M. Magee, M.D. a partnership a/k/a Schwartz and Magee, a partnership".

An appearance was filed by Margaret Mary Maguire, Esquire for the defendant Joan M. Magee, M.D. on June 20, 1989. Fifteen days later, separate counsel entered his appearance for the "Defendants, Donald S. Schwartz, M.D. and Schwartz Magee Partnership". A praecipe for a rule to file a complaint was submitted by counsel for Doctor Magee to the prothonotary. Thereafter, a rule was entered and a four-count complaint was filed reciting, in relevant part, that:

16. On and before May 18, 1987, a minor Daniel Keech was under the pediatric care of Donald S. Schwartz, M.D., Joan Magee, M.D. and the partnership of Donald S. Schwartz, M.D. and Joan Magee, M.D.

17. On and before May 18, 1987, defendant Donald S. Schwartz, M.D. prescribed Poly–Vi–Flor for Daniel Keech and defendants Joan Magee, M.D. and Donald S. Schwartz, M.D. cared for and treated Daniel Keech.

19. At all relevant times, the Poly–Vi–Flor tablet was used by plaintiffs herein for minor child Daniel Keech pursuant to and in compliance with the instructions of defendants.

20. On or about May 18, 1987, while Daniel Keech was swallowing the Poly–Vi–Flor tablet designed, manufactured, marketed, distributed, sold and prescribed by defendants, Daniel Keech suddenly and without warning

choked on the Poly–Vi–Flor tablet, causing him to be unable to breathe.

21. As a result of the ingestion of the Poly–Vi–Flor tablet on or about May 18, 1987, plaintiff Daniel Keech suffered massive brain damage and anoxic encephalopathy, resulting in severe and permanent physical, mental and emotional disabilities which will limit his ability to enjoy life and will require intensive and long standing physical and occupational therapy and total and permanent supportive life time care.

Counts I, II and III were preoccupied with holding the manufacturer/distributors accountable for the injuries sustained by Daniel Keech under theories of strict liability, breach of (express and implied) warranty and negligence. In count IV of the complaint, the plaintiffs alleged that Doctors Schwartz and Magee, "both jointly and individually", were negligent in the care and treatment of the minor-child, and they listed nineteen instances to demonstrate the claimed negligence.

On August 3, 1989, counsel for Doctor Magee filed preliminary objections raising a question of venue, seeking a motion to strike and in the nature of a demurrer. In the latter pleading, Doctor Magee argued that, inasmuch as the claim against her was "based upon the allegations that she was aware that Donald S. Schwartz, M.D. had prescribed Poly–Vi–For [sic] for Daniel Keech", the plaintiffs' complaint failed to state any cause of action against her upon which the court could grant relief. As such, she requested that the complaint against her be dismissed. See Paragraphs 16 & 17.

In response to Doctor Magee's preliminary objections, in particular paragraph 16, the plaintiffs answered as follows:

16. Admitted in part but denied as incomplete. Plaintiffs believe and therefore aver that defendants Donald S. Schwartz, M.D. and Joan M. Magee, M.D. are partners and that defendant Joan M. Magee treated the minor plaintiff Daniel Keech during the relevant time period. As a partner of Donald S. Schwartz, M.D., Joan M.

Magee, M.D. is liable for misconduct of the partnership. Furthermore, as Dr. Schwartz's partner and a treating physician, she is liable for her failure to warn Daniel Keech's parents about the dangers of Poly–Vi–Flor tablet and/or to take steps to halt the prescribing of the Poly–Vi–Flor tablet for Daniel Keech. See paragraph 35 of the Plaintiffs' Complaint which is incorporated by reference as if fully set forth herein.

Additionally, Attorney Jerome E. Ornsteen filed an answer on behalf of "Donald S. Schwartz, M.D. and Schwartz Magee Partnership" in which it was denied that Doctor Schwartz was either a partner with Doctor Magee or that such an entity as "Schwartz and Magee" as a partnership existed. See Paragraphs 13 & 16. Further, in their Memorandum of Law in opposition to Doctor Magee's preliminary objections, the plaintiffs contended that Doctor Magee and Schwartz were partners, and, therefore, were "legally responsible" for the other's "misconduct and mistreatment" of the minor-plaintiff. Lastly, the plaintiffs averred that Doctor Magee, as Daniel's pediatrician, failed in her duty to "advise, instruct and warn" them about the choking hazard for young children and the dangers of the Poly–Vi–Flor tablet.

By order dated November 15, 1989, the preliminary objections of the defendant Joan M. Magee, M.D., in the nature of a demurrer, were sustained, and, as a result, the plaintiffs' complaint was dismissed as to the defendant Joan M. Magee, M.D. Of interest is the fact that on the face of the November 15th order appears the following verbiage, handwritten by the court below, that: "No cause of action stated as to Joan M. Magee, individually". In its opinion in support of its order, the court wrote:

The only allegation against Dr. Magee is that she cared for Daniel Keech and was aware that Dr. Schwartz had prescribed Poly–Vi–Flor for Daniel. This "awareness" on the part of Dr. Magee is not causually [sic] related to Daniel Keech's injuries. If there is any liability in pre-

scribing vitamins, it rests exclusively with Dr. Schwartz, the prescribing physician.

> There being no cause of action stated against Dr. Magee *individually*, her demurrer was sustained and Plaintiff's Complaint was dismissed as to Defendant Magee.

Lower Court Opinion at 2 (Emphasis added). Once the order in question was reduced to judgment, the plaintiffs perfected an appeal to this Court.

 Preceding an examination of the claims of the plaintiffs, we broach the subject of the appealability of the order since the entire litigation has not terminated with the dismissal of Joan M. Magee, M.D. from the lawsuit. Normally, this would signal the presence of an interlocutory order. However, instantly, the grant of Joan M. Magee, M.D.'s preliminary objections in the nature of a demurrer removes her from the lawsuit, and terminates the litigation against her by the plaintiffs in her "individual" capacity. Thus, such an action by the court below constitutes a final appealable order. See *U.S. National Bank in Johnstown v. Johnson*, 506 Pa. 622, 628, 487 A.2d 809, 813 (1985) (The dismissal of a complaint as to one defendant upon its preliminary objections is a final appealable order).

 The appellants raise four issues for our consideration. The first to be addressed is framed as follows:

> Was it error to dismiss plaintiffs' medical malpractice action against Joan M. Magee, M.D. where plaintiffs alleged that Dr. Magee breached her duty to provide appropriate pediatric care to young Daniel Keech and that Daniel sustained injury as a result thereof?

To start with, we would observe that to establish a case of malpractice requires evidence of " 'a negligent or unskillful performance by a physician of the duties which are devolved and incumbent upon him on account of his relations with his patients, or of a want of proper care and skill in the performance of a professional act'." *Hodgson v. Bigelow*,

335 Pa. 497, 504, 7 A.2d 338, 342 (1939); see also *Collins v. Hand*, 431 Pa. 378, 246 A.2d 398, 400–401 (1968).

■ It is the appellants' contention that Doctor Magee breached her physician-patient duty to Daniel Keech by failing to prescribe an alternative medicine (powder or liquid in form) or advising the child's parents of the choking hazard to children between two and four years of age who ingest the medication in question.

There is a paucity of cases to guide us in our decision. Even the appellants' citation to *Cross v. Huttenlocher*, 185 Conn. 390, 440 A.2d 952 (1981), to buttress their argument that Doctor Magee was negligent in not advising the parents of the minor-child of the hazardous nature of the Poly–Vi–Flor tablet, is not supportive of such a contention.

In *Cross*, the Connecticut Supreme Court reversed the trial court's directed verdict in favor of the defendant Doctor Huttenlocher, who had failed to warn young Elizabeth Cross' parents of the risk of blindness associated with the drug Atabrine.

The appellants portray Doctor Huttenlocher as one who did not prescribe any of the drug to the child, yet the Connecticut court found that the jury should have been allowed to weigh and to sift all the evidence in the case relating to his failure to warn. The case was remanded for a new trial. We view the case in a different light. For example, in *Cross*, the case was concerned with a physician's duty to a patient who took a potentially dangerous prescription drug pursuant to the *physician's direction.*

Further, there was evidence in *Cross* that Doctor Huttenlocher notified the child's then attending physician, whom she started seeing because of the inconvenience of traveling to Doctor Huttenlocher's office, and advised him that the child "was to continue to use" the drug. Moreover, on a subsequent occasion, when the youngster's mother requested a copy of the child's latest prescription to facilitate her admission into the Hartford Regional Center, "[h]is [Dr.

Huttenlocher's] response included a prescription for Atabrine."

Instantly, unlike in *Cross*, there is no allegation that Doctor Magee at any time prescribed or even recommended the use of the complained-of drug for or to the minor-child. On the contrary, the appellants concede in their complaint and appellate brief that it was Doctor Schwartz who "prescribed" the Poly–Vi–Flor. Thus, on the strength of *Cross*, we are not persuaded to endorse the appellants' position that Doctor Magee had a duty to advise of the claimed dangers attendant to the prescription drug, Poly–Vi–Flor. See Complaint, Paragraphs 17 & 18.

In fact, in *Boyer v. Smith*, 345 Pa.Super. 66, 497 A.2d 646 (1985), a panel of this Court ruled that the doctrine of informed consent, i.e., disclosing to a patient all of the facts, risks and alternatives associated with a recommended treatment, did not apply to the administration of therapeutic drugs with known potentially dangerous side effects by a doctor to his/her patient. The Court reasoned that the duty to obtain informed consent to treatment is rooted in the rule that any touching of a patient by a physician is technically a battery unless it is done with the patient's known consent. *Gray v. Grunnagle*, 423 Pa. 144, 155, 223 A.2d 663 (1966); *Levenson v. Souser*, 384 Pa.Super. 132, 138, 557 A.2d 1081, 1086 (1989) (en banc) (informed consent cases continued to be viewed as a battery action rather than within the conceptual framework of negligence); see also *Karibjanian v. Thomas Jefferson University Hospital*, 717 F.Supp. 1081, 1084 (M.D.Pa.1989). Since there was no touching of the patient by the doctor in the administering of prescription drugs, there was no battery requiring the necessity of securing informed consent before treating the patient. See *Karibjanian*, supra; cf. *Malloy v. Shanahan*, 280 Pa.Super. 440, 421 A.2d 803 (1980) (Plurality).

Based on the pleadings submitted by the appellants, viewed in a light most favorable to the non-moving party, Doctor Magee did not "prescribe" the medication claimed to have caused massive brain damage and anoxic encephalopa-

thy, resulting in severe and permanent disabilities to Daniel Keech. At most, Doctor Magee was "aware" of the drug prescribed by Doctor Schwartz. Viewed in this perspective, one cannot say that Doctor Magee was "involved" in either the initial decision to prescribe or even had input to the continuing use of Poly–Vi–Flor to hold her accountable for what occurred. Compare *Easter v. Hancock*, 237 Pa.Super. 31, 37, 346 A.2d 323, 328 (1975). As a result, we fail to detect the breach of a legal duty to warn the patient by Doctor Magee. Compare *Riff v. Morgan Pharmacy*, 353 Pa.Super. 21, 508 A.2d 1247 (1986). As such, we find no merit in the appellants' failure-to-advise/warn argument, cf. *Boyer*, supra, since the pleadings did not aver an increased risk of harm to the minor caused by Doctor Magee's failure to warn. The necessary proximate cause would not have been made out to allow the finder-of-fact to decide whether the increased risk was in turn a substantial factor in bringing about the resultant harm. See *Jones v. Montiore Hosp.*, 494 Pa. 410, 431 A.2d 920 (1981).

Our initial ruling, of necessity, disposes of the appellants' argument that Doctor Magee is liable for her omission in failing to protect the minor from the "hazards" of Poly–Vi–Flor.

■ The third contention of the appellants, i.e., was it error to dismiss their complaint against Doctor Magee despite her claimed liability for the negligent acts of her partner/Doctor Schwartz, is equally unpersuasive.

We do not find fault with the appellants' recitation of the law on the subject of the liability of one partner for the tortious conduct of the other partner(s). In particular, 59 Pa.C.S. §§ 325 & 327 of the Uniform Partnership Act; each provides:

*§ 325 Wrongful Act of Partner*

Where, by any wrongful act or omission of any partner acting in the ordinary course of business of a partnership ... loss or injury is caused to any person ... the partner-

ship is liable therefor to the same extent as the partner so acting or omitting to act.

*§ 327 Nature of Liability of Partner*

All partners are liable:

(1) Jointly and severally, for everything chargeable to the partnership under section 325 (relating to wrongful act of partner)....

The same holds true with the appellants reference to *McConnell v. Williams*, 361 Pa. 355, 65 A.2d 243 (1949), wherein the Supreme Court made it clear that physicians and surgeons, as other individuals, are subject to the law of agency. To the same effect see *Fanelli v. Adler*, 131 App.Div.2d 631, 516 N.Y.S.2d 716 (1987); *Zuckerman v. Antenucci*, 124 Misc.2d 971, 478 N.Y.S.2d 578 (1984); *Flynn v. Reaves*, 135 Ga.App. 651, 218 S.E.2d 661 (1975).

However, the appellants fail to grasp the crucial point that the grant of Doctor Magee's preliminary objection dismissing her from the lawsuit did so in her "individual" capacity. She still remains in the litigation as a "partner" in the averred association of "Schwartz and Magee". As such, she can still be held accountable for the wrongful/negligent acts of Doctor Schwartz committed in furtherance of the partnership. See *Levy v. First Pennsylvania Branch, N.A.*, 338 Pa.Super. 73, 487 A.2d 857 (1985). But, because the legal distinction between an "individual" and a "partnership" remains in existence, just as a stockholder is distinct from the corporation in which one owns shares, see *Union National Insurance Co. v. M. London, Inc.*, 337 Pa.Super. 526, 538–42, 487 A.2d 385, 391–392 (1985), there is no justification to retain Doctor Magee in the case in her capacity as an individual when her nexus with the case remains with her partnership capacity with Doctor Schwartz.

The last of the appellants' protestations is that the court erred in not offering them the opportunity to amend their complaint to cure any defects. The short answer to the assertion was stated properly in the appellee's brief at 12–13, which we quote with approval:

... A decision to permit an amendment to a pleading is a matter committed to the discretion of the trial court. *W.I. Snyder Corp. v. Caracciolo*, 373 Pa.Super. 486, 541 A.2d 775, 778 (1988). The lower Court did not abuse its discretion in this case. The plaintiffs had an opportunity to amend their Complaint as a matter of course within ten days after the filing of Doctor Magee's objections. Pa.R. C.P. No. 1028. The plaintiffs failed to do so. In their response to Doctor Magee's Demurrer (R. 29a–36a) the plaintiffs asked only that the demurrer be overruled. The plaintiffs at no time asked that the Court allow leave to amend the complaint if the demurrer was sustained. And in this appeal, as in the lower Court, the plaintiffs have failed to set forth any material averments which, if allowed to be added to the complaint, would support a cause of action against Doctor Magee individually. Where the allowance of an amendment would be a futile exercise, the complaint may properly be dismissed without allowance for amendment. *Carlino v. Whitpain Investors*, 499 Pa. 498, 453 A.2d 1385, 1388 (1982) (Decision not to permit amendment is proper where plaintiffs described their proposed amendments, and same remained legally insufficient).

In the present action the plaintiffs did not request leave to amend in the event that Doctor Magee's demurrer was sustained. The plaintiffs did not request that the lower Court reconsider its order sustaining the demurrer, and the plaintiffs have alleged nothing which would indicate that allowance of an amendment would be anything more than a futile exercise....

Finding no merit in any of the appellants' claims, we affirm the lower court's grant of the appellee's preliminary objections in the nature of a demurrer.

Order affirmed.

BECK, J., concurs in the result.