583 A.2d 1218

Gregory LACONIS, Appellant,

v.

BURLINGTON COUNTY BRIDGE COMMISSION and John Doe, Contractor and Richard Roe, Architect.

Gregory LACONIS

v.

BURLINGTON COUNTY BRIDGE COMMISSION and John Doe, Contractor and Richard Roe, Architect. (Two Cases)

Appeal of BURLINGTON COUNTY BRIDGE COMMISSION (Two Cases).

Superior Court of Pennsylvania.

Argued June 11, 1990.

Filed Dec. 18, 1990.

484

John F.X. Fenerty, Philadelphia, for appellant (at 7) and for appellee (at 128 and 1045).

Thomas A. Wallitsch, Allentown, for appellants (at 128 and 1045) and appellees (at 7).

Before POPOVICH, HOFFMAN and HESTER, JJ.

HESTER, Judge:

This is an appeal and cross-appeal from judgment entered following the trial court's denial of post-trial motions in this trespass action where the liability portion of the trial was heard before the trial court and the damages award was made by a jury. The plaintiff, Gregory Laconis, challenges the trial court's assessment of comparative negligence in the amount of forty-nine percent against him. The main contention of the Burlington County Bridge Commission

("the Commission") is that it is immune from suit. We reject all allegations of error and affirm the judgment.

The material facts are not disputed. Mr. Laconis instituted this action against the Commission to recover for severe personal injuries that rendered him paralyzed below his mid-body. The injuries were sustained in a single car accident which occurred on September 6, 1979, following a heavy rainfall. Mr. Laconis, who was alone, lost control of his automobile when it hydroplaned in water retained in a depression located along a portion of highway located immediately after the Burlington Bristol Bridge, which links New Jersey and Pennsylvania. The stretch of highway where the accident occurred is a toll road. The Commission operates the bridge, but the portion of the highway where the depression existed is owned by the Commonwealth of Pennsylvania.

After Mr. Laconis filed his complaint, the Commission raised as new matter the affirmative defense of governmental immunity under both New Jersey and Pennsylvania law. It also repeatedly attempted to join the Pennsylvania Department of Transportation as an additional defendant. The trial court denied the Commission's petitions to join the Commonwealth.

The issue of the Commission's liability for the accident was submitted to the bench during a four-day period. The Honorable Oscar S. Bortner rendered a verdict in favor of Mr. Laconis and determined that the Commission was fifty-one percent liable for the injuries and that Mr. Laconis was comparatively negligent in causing his injuries in the amount of forty-nine percent. The trial court explained that its assessment of liability on the Commission for the accident was based partially on the following evidence presented to it:

> We concluded that the Commission had special knowledge that the PennDot Road was in a state of disrepair resulting in the road becoming flooded (and thereby dangerous) during rainfall. Since the Commission had on its own taken steps to correct the flooding hazard on the PennDot

Road, we found it had a common law duty to warn bridge commuters of the danger they would encounter exiting the bridge, during days of extraordinary rainfall.

Trial court opinion, 12/1/89, at 3 (footnote omitted). In assessing liability on the Commission, the trial court also specifically determined that the Commission had actual knowledge of this very dangerous condition along the toll road, that the Commission previously had undertaken to warn motorists when it rained heavily by sending its police to the area to slow down motorists, that it had rained heavily in the area for hours prior to the accident, and that "the condition was in the process of being corrected at the sole initiative and expense of the Commission when the accident occurred." *Id.* at 6. Further, the trial court noted that the "Commission had conducted a series of negotiations with PennDot for taking over responsibility of that road." *Id.* Thus, the trial court determined that the Commission actually knew about the flooding hazard on the road which resulted in Mr. Laconis's hydroplaning. The evidence also establishes that on prior occasions during heavy rainfall, the Commission sent its police to the site to warn motorists to slow down. Despite this knowledge, the Commission failed to place any warning signs on the bridge, one-half of which is located in Pennsylvania, in order to warn motorists about the water accumulation in the depression. Moreover, the flooding condition had existed for at least two years, and the Commission unsuccessfully had attempted to repair the problem in June, 1979.

The damages portion of the case subsequently was tried before a jury, which awarded Mr. Laconis $2,125,000. The verdict was molded by the liability determination and delay damages were added. Judgment was entered in favor of Mr. Laconis in the amount of $1,755,985.40. This appeal and cross-appeal followed denial of cross-motions for post-trial relief.

We first address the contention of Mr. Laconis. He alleges that there are no facts in the record to support the trial court's assessment of comparative negligence against

him and that he must be considered fault-free as a matter of law. We strongly disagree. We note initially that there were no eyewitnesses to this accident. Stripped of all rhetoric, his argument is that since he was the only witness, the trial court was required to believe his testimony that he was not speeding prior to the accident and that it could not rely upon expert testimony that indicated that he had been speeding. Mr. Laconis's argument ignores the fact that expert testimony is an established part of our tort law. The testimony of the Commission's experts was premised upon observed facts, such as the trajectory of the car when it landed and skid marks on the highway. These experts premised their opinions that Mr. Laconis was speeding on these observations.

As we stated in *Lopa v. McGee*, 373 Pa.Super. 85, 88, 540 A.2d 311, 312 (1988), quoting *Burns v. City of Philadelphia*, 350 Pa.Super. 615, 626, 504 A.2d 1321, 1326–27 (1986), when we review a trial court's assessment of parties' respective negligence in causing an accident, the issue is not whether we "would have come to a different conclusion, but whether there are 'evidentiary circumstances or incontrovertible facts of such weight as to convince the court that an injustice has been done.'" In this case, the trial court premised its determination of Mr. Laconis's negligence on the testimony of two expert witnesses who had conducted tests on the road and viewed either the accident scene or photographs of the scene. The investigating police officer offered his opinion that Mr. Laconis lost control of his car because he was driving too fast for conditions. An accident reconstructionist expert, who based his opinion on the car's trajectory when it exited the road and the tire tracks left by the vehicle on the road, testified that he believed that the accident occurred because Mr. Laconis was traveling in excess of the legal speed. Although Mr. Laconis testified that he was traveling at forty to forty-five miles per hour and that his car left the road solely due to hydroplaning, the trial court was free to believe all, part, or none of the evidence presented to it. *Id.* We cannot say that its

determination that both Mr. Laconis's speed and the dangerous condition of the road contributed to the accident is a manifest injustice. Accordingly, we affirm its apportionment of negligence to Mr. Laconis.

██ Similarly, we reject the Commission's argument that the evidence was insufficient to support a finding of liability against it. The Commission not only knew about the dangerous drainage problem, but it had assumed responsibility to correct it. In June, 1979, it unsuccessfully attempted to repair the highway. In addition, it sent bridge police to the area when heavy rain fell in order to warn motorists to slow down prior to reaching the accumulation of water. Despite the fact that it both had failed to repair the problem and that it also monitored the situation by warning motorists to slow down after a heavy rainfall, the Commission did not warn motorists the night the accident occurred. The trial court determined that heavy rain had been falling the entire evening prior to the accident. We affirm the trial court's assessment of liability against the Commission based on its negligent failure to perform the duty which it had undertaken to perform. *See* Restatement (Second) of Torts §§ 323, 324.

██ The Commission also claims that the trial court erred in failing to apply the full faith and credit clause of the United States Constitution by not granting it governmental immunity under the New Jersey Tort Claims Act. We disagree. In *Nevada v. Hall*, 440 U.S. 410, 425, 99 S.Ct. 1182, 1190–91, 59 L.Ed.2d 416, 428 (1979), the Supreme Court expressly held that whether one state is required to accord sovereign immunity in its courts to another state is purely a question of comity. The Court specifically stated that if the public policy of the home state is to allow suit against another state, the full faith and credit clause does not require the home state to grant the other state immunity. Therefore, we now address the real issue before us, which is whether under principles of comity, the trial court should have applied New Jersey law in this action and

allowed the Commission to assert the defense of sovereign immunity under the New Jersey Tort Claims Act.

We note initially that in *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978), the doctrine of sovereign immunity was abolished in Pennsylvania, and it is now our stated policy to hold an entity, regardless of its nature, responsible for its tortious conduct. We also note the following additional facts that are relevant to our comity analysis. The Burlington Bristol Bridge links New Jersey and Pennsylvania. One-half of the bridge is in Pennsylvania. When it was built in 1931, the bridge was owned by a private New Jersey corporation formed specifically to acquire it. In 1948, the Commission was formed, and it acquired the bridge from the private corporation. This acquisition was made while New Jersey and Pennsylvania jointly sought to assume control of the bridge through Congress, and the acquisition of the bridge by the Commission terminated these efforts. The Commission is not funded with tax money and operates from tolls collected on the bridge and interest on money that it has invested. *See generally Driscoll v. Burlington Bristol Bridge Co.*, 8 N.J. 433, 86 A.2d 201 (1952). However, it is a public entity under New Jersey state law.

Mr. Laconis is a citizen of Pennsylvania and was injured as a result of the Commission's tortious conduct in this state. We note that the Commission suggests that all liability against it is premised upon actions that occurred in New Jersey; however, we reject this suggestion for several reasons. First, the Commission's argument ignores that one-half of its operations are conducted in Pennsylvania since one-half of its bridge is located in Pennsylvania. Furthermore, the Commission owns property in Pennsylvania that links its bridge to the Commonwealth-owned highway where the accident occurred. Therefore, there is no basis for the Commission's position that the warning signs that it should have posted would have been in New Jersey. Since the problem existed on the Pennsylvania side of the bridge, the warning signs that may have prevented this

accident would have been posted on the portion of the bridge located in Pennsylvania or on the Commission-owned land in Pennsylvania that is linked to the highway where the accident occurred. In its arguments before us, the Commission ignores the fact that one-half of its asset (the bridge) is located in Pennsylvania. Furthermore, despite the Commission's indications to the contrary, its failure to place warning signs was *not* the only reason the trial court gave for its assessment of liability against it. The trial court stated that since the Commission had "undertaken to correct the problem on its own," it owed the duty to motorists to warn them about the problem. Trial court opinion, 12/1/89, at 3. Presumably, warning could have been made either with a sign or with police, as in the past. The trial court, as noted *supra*, specifically assessed liability on the Commission due to its assumption of control over the problem by performing repairs on the hazard and by its provision of police when flooding occurred. All of these actions occurred in Pennsylvania.

It is clear, then, that the following facts govern the comity analysis: the injured party is a citizen of Pennsylvania, the injury occurred in Pennsylvania, the tortious conduct occurred in Pennsylvania, and the tortfeasor, while a creature of New Jersey law, conducts a significant portion of its business in Pennsylvania. Furthermore, the Commission is not funded by tax money. We conclude that under these circumstances, principles of comity do not require us to apply the New Jersey sovereign immunity statute.

 Under principles of comity, the rights and liabilities of the parties with respect to a tort action are determined by the law of the state which has the most significant relationship to the occurrence and the parties. *See Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964); Restatement (Second) of Conflicts of Laws, §§ 145, 146; *see also Giovanetti v. Johns–Manville Corp.*, 372 Pa.Super. 431, 539 A.2d 871 (1988); *Miller v. Gay*, 323 Pa.Super. 466, 470 A.2d 1353 (1983). The following contacts, which are to be applied qualitatively rather than quantitatively under the

case law, that are taken into account in determining which state law applies: the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation, and place of business of the parties; and the place where the relationship between the parties is centered. Furthermore, in an action for personal injuries, the law of the state where the injury occurred normally determines the rights and liabilities of the parties, unless another state, applying the contacts test, has a more significant relationship to the occurrence and parties.

Applying these principles to the present case, Pennsylvania clearly has the most significant relationship to these parties and this tortious occurrence. The place of the injury and tortious conduct occurred here. The plaintiff is domiciled in Pennsylvania, which has a strong interest in protecting its citizens against tortious conduct, and the Commission conducts at least one-half of its operations in Pennsylvania. The only contact New Jersey has with this action is that the Commission was incorporated under its laws and conducts business there also. These contacts both qualitatively and quantitatively compel application of Pennsylvania law. Thus, under principles of comity, the trial court was not required to afford the Commission immunity under the New Jersey Tort Claims Act.

■ The Commission's final contention is that the trial court erred in denying its motion to join the Pennsylvania Department of Transportation as an additional defendant. The Commission concedes that its first joinder motion was denied on December 26, 1985, and that it never obtained a ruling on its second motion. The case law is clear that a motion denying joinder of a defendant is a final, appealable order. *National Liberty Life Insurance Co. v. Kling Partnership*, 350 Pa.Super. 524, 526 n. 1, 504 A.2d 1273, 1274 n. 1 (1986); *see also Keech v. Mead Johnson and Co.*, 398 Pa.Super. 329, 580 A.2d 1374 (1990). In order to obtain appellate review of the propriety of the December 26, 1985

order denying joinder, the Commission was required to appeal within thirty days of entry of the order.

Based upon the foregoing, the judgment is affirmed.