Dorothy McBRIDE, et al., individually and on behalf of all others similarly situated, Plaintiffs,

v.

GALAXY CARPET MILLS, INC., et al., Defendants.

Violet HOWELL, et al., individually and on behalf of all others similarly situated, Plaintiffs,

v.

SHAW INDUSTRIES, INC., et al., Defendants.

Civil Action Nos. 4:93–cv–309–RLV, 4:93–cv–321–RLV.

United States District Court, N.D. Georgia.

Jan. 25, 1995.

Irwin W. Stolz, Jr., Gambrell & Stolz, Atlanta, GA, John Jenkins Barrow, Gene Mac Winburn, Winburn Lewis & Barrow, Athens, GA, Joseph C. Kohn, George W. Croner, Diana Liberto, Kohn Swift & Graf, Philadelphia, PA, pro hac vice, Barry F. Greenberg, Barry F. Greenberg & Associates, Bridgeport, PA, pro hac vice, for Dorothy McBride, Gerard Hull, Marianne Hull, Anthony Coletta, M.D., Nicholas A. Coletta, Wayne Lilly, Sandra Martinez.

Irwin W. Stolz, Jr., Gambrell & Stolz, Atlanta, Ga., John Jenkins Barrow, Gene Mac Winburn, Winburn Lewis & Barrow, Athens, Ga, Joseph C. Kohn, Diana Liberto, Kohn Swift & Graf, Philadelphia, PA, pro hac vice, Barry F. Greenberg & Associates, Bridgeport, PA, pro hac vice, for Carrie Hayes, Nancy Landon.

James Henry Bisson, III, Mitchell & Mitchell, Dalton, GA, Howard K. Priess, II, Edmund J. Siegert, Tressler Soderstrom Maloney & Priess, Chicago, IL, pro hac vice, for Galaxy Carpet Mills, Inc.

Horace Greely Joiner, Jr., Lemuel Hugh Kemp, Kinney Kemp Pickell Sponcler & Joiner, Dalton, GA, Francis McGill Hadden, Manta & Welge, Philadelphia, PA, pro hac vice, Bruce Alan Kling, Office of Bruce Alan Kling, Dalton, GA, for Diamond Rug & Carpet Mills, Inc.

Alfred B. Adams, III, Eileen Margaret Crowley, Tanya Michelle Lawson, Holland & Knight, Atlanta, GA, Frank C. Bender, Deasey Mahoney Bender & McKenna, Philadelphia, PA, pro hac vice, for Interloom International, Inc.

David R. Aufdenspring, Jesse Watson Hill, Robert Moore Travis, LeeAnn Jones, William Vance Custer, IV, Kristen Yadlosky, Powell Goldstein Frazer & Murphy, Atlanta, GA, Michael Scott French, Hunton & Williams, Atlanta, GA, Tanya Michelle Lawson, Holland & Knight, Atlanta, GA, for Shaw Industries, Inc.

Robert Maddox Brinson, Brinson Askew Berry Siegler Richardson & Davis, Rome, GA, David H. Marion, Francis P. Newell, Peter Breslauer, Montgomery McCracken Walker & Rhoads, Philadelphia, PA, pro hac vice, Mitchell W. Berger, Manuel Kushner, Berger Shapiro & Davis, Ft. Lauderdale, FL, pro hac vice, for World Carpets, Inc.

Julia Bennett Jagger, Arthur Timothy Jones, Edward C. Henderson, Jr., Hawkins & Parnell, Atlanta, GA, J. Gordon Cooney, Jr., Joseph B.G. Fay, James D. Pagliaro, John H. Lewis, Jr., Morgan Lewis & Bockius, Philadelphia, PA, pro hac vice, Mary Ellen Nepps, Christie Pabarue Mortensen & Young, Philadelphia, PA, pro hac vice, for The Carpet and Rug Institute.

Alfred B. Adams, III, Eileen Margaret Crowley, Tanya Michelle Lawson, Holland & Knight, Atlanta, GA, for Coronet Industries, Inc.

James J. Murphy and Donald M. Thompson, pro hac vice, Bryan Cave, Washington, DC, for Fleishman–Hillard, Inc.

Joseph C. Kohn, George W. Croner, Kohn Swift & Graf, Philadelphia, PA, pro hac vice, Barry F. Greenberg, Barry F. Greenberg & Associates, Bridgeport, PA, pro hac vice, for Violet Howell, Nancy Landon, Diana Friedman.

Irwin W. Stolz, Jr., Gambrell & Stolz, Atlanta, GA, John Jenkins Barrow, Gene Mac Winburn, Winburn Lewis & Barrow, Athens, GA, Joseph C. Kohn, Diana Liberto, Kohn Swift & Graf, Philadelphia, PA, pro hac vice, Barry F. Greenberg, Barry F. Greenberg & Associates, Bridgeport, PA, pro hac vice, for Carrie Hayes, Gerard Hull, Marianne Hull, Sandra Martinez, Wayne Lilly.

David R. Aufdenspring, Jesse Watson Hill, Robert Moore Travis, LeeAnn Jones, William Vance Custer, IV, Kristen Yadlosky, Powell Goldstein Frazer & Murphy, Atlanta, GA, Michael Scott French, Hunton & Williams, Atlanta, GA, John F. Kent, Anne M. Manero, Marks Kent & O'Neill, Philadelphia, PA, pro hac vice, for Shaw Industries, Inc.

David H. Marion, Francis P. Newell, Montgomery McCracken Walker & Rhoads, Philadelphia, PA, pro hac vice, Mitchell W.

Berger, Manuel Kushner, Berger Shapiro & Davis, Ft. Lauderdale, FL, pro hac vice, for World Carpets, Inc.

Alfred B. Adams, III, Eileen Margaret Crowley, Tanya Michelle Lawson, Holland & Knight, Atlanta, GA, Frank C. Bender, Deasey Mahoney Bender & McKenna, Philadelphia, PA, pro hac vice, for Beau Lieu of America, Inc.

Julia Bennett Jagger, Arthur Timothy Jones, Edward C. Henderson, Jr., Hawkins & Parnell, Atlanta, GA, Joseph B.G. Fay, J. Gordon Cooney, Jr., John H. Lewis, Morgan Lewis & Bockius, Philadelphia, PA, pro hac vice, Caswell O. Hobbs, III, Morgan Lewis & Bockius, Washington, DC, pro hac vice, Mary Ellen Nepps, James A. Young, Christie Pabarue Mortensen & Young, Philadelphia, PA, pro hac vice, for The Carpet and Rug Institute.

Alfred B. Adams, III, Eileen Margaret Crowley, Tanya Michelle Lawson, Holland & Knight, Atlanta, GA, for Coronet Industries, Inc.

Lemuel Hugh Kemp, Kinney Kemp Pickell Sponcler & Joiner, Dalton, GA, Bruce Alan Kling, Office of Bruce Alan Kling, Dalton, GA, for Diamond Rug & Carpet Mills, Inc.

### ORDER

VINING, Chief Judge.

These cases are proposed class actions in which the plaintiffs allege that they have suffered personal injuries because of their exposure to certain carpeting manufactured by the defendants. The plaintiffs originally sought to represent a class consisting of all purchasers of the defendants' products including those who had not suffered any physical injury. However, in a brief filed on August 22, 1994, the plaintiffs modified their prior request and now seek certification of a class consisting of:

All individuals who purchased SBR [styrene-butadiene rubber] latex-backed carpeting manufactured by the defendants during the period January 1, 1980 to date and have suffered physical and/or psychological injuries from exposure to the carpeting, excluding from the class the defendants' officers or directors.

Pending before the court is the plaintiffs' motion for class certification. The court, by oral communication, also raised the issue of whether the undersigned should recuse himself pursuant to U.S.C. § 455(b)(4). Both of these issues are now ripe for decision.

### I. RECUSAL

■ Because the undersigned was concerned that recusal might be required in this case, the court asked the parties to submit briefs addressing the following two questions:

(1) If Judge Vining purchased carpeting manufactured by the defendant since 1980 and is, therefore, a potential class member, is he required to recuse himself pursuant to 28 U.S.C. § 455(b)(4)?

(2) If Judge Vining purchased carpeting since 1980 and is unsure of the manufacturer, is he required to recuse himself pursuant to 28 U.S.C. § 455(b)(4)?

Section 455(b)(4) requires that a judge recuse himself if he knows that he or his spouse "has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." If a judge does have a financial interest, recusal is mandatory and may not be waived by the parties. See Parker v. Connors Steel Co., 855 F.2d 1510 (11th Cir. 1988). Additionally, recusal is required regardless of how insubstantial the judge's financial interest might be. See In Re: Cement Antitrust Litigation, 688 F.2d 1297 (9th Cir.1982).

As an initial matter, the court notes that the plaintiffs, in responding to the questions presented by the court, suggested that disqualification under 28 U.S.C. § 455(a) would also be required. That section requires a judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned."

■ The plaintiffs argued that if the undersigned or one of his family members suffered any adverse health related reactions to carpeting, the public might perceive a bias in the plaintiffs' favor; on the other hand, if neither the undersigned nor his family had

any adverse reactions, a question might be raised as to whether he might view the plaintiffs' causes of action with skepticism. The court does not believe that section 455(a) requires a court to be perceived by the public as being "opinion-less" about the merits of a plaintiff's case or of the defenses asserted by a defendant. The court does not believe that the general public would question a judge's impartiality simply because the judge might have an opinion with respect to the arguments advanced by the parties. *See, e.g., United States v. Alabama,* 828 F.2d 1532 (11th Cir.1987) (minority judges not disqualified from hearing civil rights cases). The court finds that recusal under section 455(a) is not required.

The plaintiffs also suggested that disqualification under § 455(b)(5) was required. That section requires recusal, inter alia, if the judge or his spouse "[i]s a party to the proceeding." Although this subsection is not included in the questions addressed to the parties, the court has considered the plaintiffs' arguments because the rationale applicable to subsection 4 is equally applicable to subsection 5.

■ As the court previously noted, the plaintiffs have now modified the proposed class definition, so as to include only those people who have suffered physical or emotional injury as a result of their exposure to certain carpeting manufactured by the defendants. The fact that neither the undersigned nor his spouse has suffered any such injury as a result of exposure to carpeting possibly manufactured by the defendants means that neither he nor his spouse would be a member of the class nor have a financial interest of the outcome of this litigation. Consequently, recusal is not required under section 455(b).

Although the plaintiffs have attempted to "reserve the right" to seek certification of a class of carpeting purchasers who have not suffered any physical injuries, *see* reply memorandum in support of plaintiffs' motion for class certification (filed on August 22, 1994), the court does not view such "reservation" as sufficient to implicate the provisions of section 455(b).

For the foregoing reasons, the court finds that recusal is neither required nor warranted under the facts of this case.

## II. CLASS CERTIFICATION

Rule 23(a), Federal Rules of Civil Procedure sets out the four prerequisites for the maintenance of all class actions:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact, to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of a class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

If the four prerequisites of Rule 23(a) are met, the movant must then satisfy one of the subparts of Rule 23(b).

The plaintiffs in this action seek certification pursuant to Rule 23(b)(3), which provides for class certification if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Although the defendants state that they "dispute" the plaintiffs' analysis of Rule 23(a), they focus their arguments upon the contention that the plaintiffs cannot satisfy the requirements of Rule 23(b)(3). The court, likewise, will assume that the plaintiffs could meet the requirements of Rule 23(a) and will, therefore, address the problems encountered by the plaintiffs as they seek to have a class certified under Rule 23(b)(3).

■ In this case, individual issues, both of law and of fact, predominate over any common issues. The plaintiffs' assertion of commonality of facts is based upon their argument that the chemical composition of the defendants' carpeting is "uniform across styles, colors, grades, and manufacturers." Reply memorandum in support of plaintiffs' motion for class certification, at 12. Although it may be true that, as asserted by

the plaintiffs, between 90% and 93% of all carpeting sold in the United States has SBR latex-backing, it does not necessarily follow that all carpeting is, therefore, a fungible, homogeneous product. From the evidence before the court, it appears that SBR latex-backing is merely one method, although it is the predominant method, of affixing a backing to carpeting. SBR latex forms the base for the adhesive used to lock in the tufts and/or secure the backing to the carpeting. To that base are added a variety of different materials according to each manufacturer's specifications and each carpet style's specifications.

The evidence before the court also shows that there are a number of different manufacturers of SBR latex, whose products are used in the manufacture of carpeting. BASF, Dow Chemical Company, GenCorp, the Goodyear Tire & Rubber Company, Reichhold Chemicals, Inc., and Uniroyal all manufacture SBR latex products, which the defendant carpet mills have used at various times since 1980. *See* affidavit of E. Kenneth McIntosh, attached as Appendix 2 to the defendants' surreply memorandum in opposition to plaintiffs' motion for class certification.

Moreover, just as there are different types of SBR latex backing, there are also different levels of emission of volatile organic compounds [hereinafter referred to as "VOCs"] as a result of the different formulations of the SBR latex backing. One of the primary issues in this case is not whether carpeting emits VOCs (the defendants concede that virtually every new carpet emits certain levels of VOCs). Rather, the issue that is to be decided is whether the particular carpet to which a particular plaintiff was exposed emitted a sufficient level of VOCs to cause the harm suffered by that person and whether the emission of VOCs at that level constitutes a defect.

Evidence of the fact that carpeting and VOC emission are not fungible is found in research documents prepared for Ms. Sandra Martinez, one of the plaintiffs. *See* Appendix 4 to the defendants' surreply memorandum in opposition to plaintiffs' motion for class certification. For example, one carpet sample off-gassed four compounds. Another off-gassed seven compounds. And another off-gassed 22 compounds. Dr. Kenneth P. Reid, who submitted the reports to Ms. Martinez, concluded that two of the samples did not contain "any high degree of toxicity" although those particular samples were not "as toxic" as previous samples submitted and tested by him. This evidence alone belies the plaintiffs' contention that there is a single identifiable "defect" in all SBR-backed carpeting manufactured by defendants since January 1, 1980.

Because the carpeting manufactured by the defendants between January 1, 1980 and the present is not a fungible product and because different carpeting emits different levels of VOCs, it would be incumbent upon each plaintiff to prove that the particular carpeting purchased by him or her emitted such a high level of VOCs as to cause his or her injuries. Because of the necessity of such proof, the court finds that individual factual determinations with respect to each plaintiff would predominate over factual issues applicable to the class as a whole.

The plaintiffs contend also that there are several legal issues which are common to all class members and which, therefore, may be resolved in one form. Among those legal issues are

(1) whether SBR-latex carpeting is unreasonably dangerous and defective,

(2) whether the defendants are strictly liable under Restatement of Torts (Second), § 402(A),

(3) whether the defendants have breached the standard of reasonable care,

(4) whether the defendants have engaged in outrageous or wanton conduct such that they are liable for punitive damages,

(5) whether the defendants' failure to disclose certain facts constitutes fraud in this representation, and

(6) whether the defendants had a duty to warn the class.

The plaintiffs argue that because resolution of these issues focuses on the defendants' conduct, any differences among class

members would not be material and that the issues, therefore, lend themselves to a class-wide adjudication. However, the fact that these issues may focus on the conduct of a small number of manufacturers as opposed to the conduct of thousands of potential class members does not mean that the issues are susceptible to class-wide adjudication.

■ Because these actions were originally filed in Pennsylvania, this court, as a diversity court, must follow the choice-of-law rules of Pennsylvania. *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Consequently, this court must look to Pennsylvania law to determine whether it may apply substantive Pennsylvania law to the claims of the plaintiffs or whether it best to apply the substantive law of the states wherein the individual plaintiffs reside.

■ Pennsylvania has expressly rejected the place of injury rule and has adopted, in its place, a "flexible conflicts methodology," wherein the place having the most interests in the problem and which is most intimately concerned with the outcome of the litigation is the forum whose law should be applied. *Griffith v. United Air Lines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964). Primary consideration under this analysis is the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interests in the application of its rule of law. *McSwain v. McSwain,* 420 Pa. 86, 215 A.2d 677 (1966). Additionally, in reviewing the relative interest of each jurisdiction, Pennsylvania courts will weigh their respective contacts qualitatively, rather than quantitatively. *Cipolla v. Shaposka,* 439 Pa. 563, 267 A.2d 854 (1970). Such contacts include:

(1) the place where the injury occurred,

(2) the place where the conduct causing the injury occurred,

(3) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and

(4) the place where the relationship between the parties is centered.

*Laconis v. Burlington County Bridge Commission,* 400 Pa.Super. 483, 583 A.2d 1218 (1990).

As is true with many legal principles, the rule is more easily stated than it is applied.

In support of their contention that questions of law common to the members of the class predominate over any questions affecting only individual members, the plaintiffs urge this court to apply Georgia law, at least as to all liability issues. The plaintiffs also argue that, even if the court did not apply Georgia law, there are enough similarities in the laws of the different states with respect to such issues as strict liability, breach of warranty, and intentional tort that the problem of applying different states' laws would be neither complex or impracticable.

■ With respect to the latter argument advanced by the plaintiffs, this court rejects the idea that it can apply a generalized law, or group of laws, based upon apparent similarities in the different states' negligence standards, warranty standards, etc. Such a course of action would result in the formulation of a federal common law, which is contrary to *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The court also rejects the plaintiffs' alternative suggestion that the court could form different groups of plaintiffs based upon similarities of state statutes because it is extremely doubtful (and the plaintiffs had not shown otherwise) that the same group of states which have similar strict liability laws would have similar duty to warn standards and would have similar statutes of limitation. The court concludes that any kind of matrix which tries to take into consideration all these varying "similarities" would itself be so complex as to make the case unmanageable.

■ The plaintiffs also suggest that under Pennsylvania's conflict of laws rule, Georgia law could be applied. However, even using the analysis required under Pennsylvania law, this court concludes that Georgia does not have "most interests in the problem" and is not the state "most intimately concerned with the outcome" of litigation. Because the plaintiffs reside throughout the United States, Georgia is not the place where the

injury occurred, except for those plaintiffs who reside in Georgia. With respect to the domicile of the parties, it is clear that the vast number of parties reside outside the state of Georgia because this is a proposed nationwide class action. Furthermore, the only "relationship between the parties" is the fact that the plaintiffs allege they have been injured by a product manufactured by the defendants. There is no contractual relationship, no fiduciary relationship, or any other kind of legal relationship between the parties that is centered in Georgia. Furthermore, there is no evidence in the record that the conduct allegedly causing the injury (i.e. the application of SBR latex backing to carpeting) occurred at the defendants' manufacturing plants in Georgia rather than at their plants in other states. The court believes that these contacts, both qualitatively and quantitatively, are insufficient for Georgia to have the most interests and to be most intimately concerned with this litigation.

In concluding that it is the law of the states wherein each plaintiff resides, rather than the forum state, should govern their causes of action, this court is guided by the Supreme Court's language in the *Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). There the Supreme Court rejected the Supreme Court of Kansas's decision that in adjudicating the nationwide class action, a state court has much greater latitude in applying its own law to the transactions in question than might otherwise be the case.

In *Shutts*, the Kansas courts sought to apply Kansas law even though only a few of the leases and royalty agreements at issue had been executed in that state. "Given Kansas' lack of 'interest' in claims unrelated to that State, and the substantive conflict with jurisdictions such as Texas, we conclude that application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional amendments." 472 U.S. at 822, 105 S.Ct. at 2979 (footnote omitted). Although this court is hesitant to take judicial notice of the "fact" that an overwhelming majority of the potential class members purchased the carpeting in states other than Georgia, the court is confident enough of this conclusion to believe *Shutts* is controlling in this case.

Another factor militating against the use of Georgia law in this case is the fact that the plaintiffs have prayed for punitive damages. Under Georgia law 75% of any amount awarded as punitive damages is paid then to the state treasury. O.C.G.A. § 51–12–5.1(e)(2). Whether this law is good or wise or fair is irrelevant; what is significant to this court's analysis is the fact that if non-Georgia residents brought suit in their states and recovered punitive damages, they would be entitled to retain the full amount of the award and not lose 75% of it to the state. Requiring plaintiffs to give up such a substantial portion of a punitive damages award would be unfair to those plaintiffs residing outside the state of Georgia and could, conceivably, add large numbers of plaintiffs seeking to opt out because of their desire to retain the full benefit of any punitive damages awarded.

The court also notes that the plaintiffs seek certification of a class of persons who purchased carpeting since January 1, 1980. However, Georgia has a statute of repose for strict liability claims and prohibits suits commenced more than ten years from the date of the first sale or consumption of the property causing the injury. O.C.G.A. § 51–1–11. Thus Georgia law would bar some of the plaintiffs' strict liability claims that might otherwise be maintainable in other jurisdictions.

In urging this court to certify a nationwide class, the plaintiffs argued that such a vehicle provides a method of redress for individuals with claims of modest value when compared to the cost of prosecuting complex litigation. "Here, even plaintiffs with claims of $100,000 or more cannot, as a practical matter, afford to retain the expert witnesses, laboratories, and discovery documents needed to properly prosecute their claims." Plaintiffs' posthearing submission in support of their motion for class certification at 2. Of course, under this rationale, it would always be beneficial to plaintiffs to group their actions and pool their resources, especially when faced with a well-financed defendant. But that is not the proper test for determining whether to certify a class action. Because this is a diversity

action, each plaintiff's claim must be in excess of $50,000. This is no small sum, even though the court recognizes that an individual plaintiff with only a $50,000 claim might face substantial hardship in prosecuting that claim against the defendants. However, the court does not believe that such impediment is sufficient to overcome the shear unmanageability of a nationwide class action of the kind contemplated by the plaintiffs. Additionally, the court notes that the plaintiffs could possibly file class actions in each of the 50 states, thereby obviating their concern that individual plaintiffs might not have the financial resources to litigate against the defendants, and such statewide class actions would also cure many of the manageability problems, such as differing and, perhaps, conflicting, state laws.

In summary, the court finds that the questions of law or fact common to the members of the class do not predominate over questions affecting only individual class members; the court further finds that the difficulty in applying the law applicable to each plaintiff's claims would make a nationwide class action unmanageable. Consequently, the plaintiffs' motions for class certification are DENIED.

SO ORDERED.