**Apple v. Ford Motor Co.**

C.P. of Allegheny County, no. GD02-13860.

*Thomas E. Crenney,* for plaintiffs.
*Nancy R. Winschel,* for defendant.
*C. Peter Hitson,* for additional defendant.

WETTICK JR., *A.J.,* November 18, 2004—Ford's motion for partial summary judgment is the subject of this opinion and order of court.

Plaintiffs are Michigan residents. In December 2001, they traveled from their home in Michigan to visit relatives in Pennsylvania. They were driving a 2000 Mercury that they had leased in Michigan. The vehicle was titled and garaged in Michigan and insured under a motor vehicle policy issued in Michigan under Michigan law. Ford is a Delaware corporation with its principal place of business in Michigan.

While in route to visit relatives in eastern Pennsylvania, plaintiffs were involved in a one-vehicle accident which occurred in Clarion County, Pennsylvania. Ms. Apple was seriously injured.

Initially, she received treatment in Pittsburgh. After five weeks, she was transferred to a Michigan hospital where she was treated for approximately three months. It appears that through Michigan insurance, plaintiffs have paid for Ms. Apple's medical treatment in Pennsylvania.

In this lawsuit, plaintiffs have raised claims based on theories that the vehicle's door retention and safety restraint systems were not crashworthy. Plaintiffs seek compensatory and punitive damages.

Under Michigan legislation, punitive damages designed to punish or deter misconduct cannot be recovered. It appears that the purpose of the legislation is to protect Michigan manufacturers from excessive financial liabilities, to promote their financial stability, and to encourage manufacturers in states that permit punitive damages to relocate to Michigan. *In re Air Crash Disaster Near Chicago, Ill.,* 644 F.2d 594 (7th Cir. 1981); *In re Disaster at Detroit Metro Airport,* 750 F. Supp. 793 (E.D. Mich. 1989).

Also under Michigan legislation, in a product liability action the total amount of damages for noneconomic loss (in the absence of death or permanent loss of a vital bodily function) shall not exceed $280,000. According to Ford's brief, the purpose of this statutory limitation is to encourage the manufacture and distribution of products in Michigan by protecting from large damage awards those Michigan businesses that place products into the stream of commerce.

Through its motion for partial summary judgment, Ford seeks a ruling that this litigation is governed by Michigan law. Consequently, I should dismiss plaintiffs' punitive damage claim and restrict recovery for noneconomic loss to $280,000.

I.

Pennsylvania has a public policy that punitive damages should be awarded against manufacturers of prod-

ucts that are expected to enter Pennsylvania if it is established that the manufacturers know that their products are defective and dangerous. The purpose of this public policy is to protect Pennsylvania residents and visitors to the state by deterring manufacturers from manufacturing products which may enter Pennsylvania that are defective and dangerous. The policy is most applicable to products, such as motor vehicles, that, if unsafe, are likely to injure residents and visitors to the state who did not select, and are not using the product. Pennsylvania's public policy is equally furthered by awarding punitive damages to the plaintiff who is a Pennsylvania resident and to the plaintiff who is a resident of another state. Furthermore, Pennsylvania's public policy would be thwarted by applying the public policy of another state that seeks to encourage manufacturers to leave Pennsylvania as long as Pennsylvania follows its policy of awarding punitive damages. Thus, the punitive damage claim will be governed by Pennsylvania law.

## II.

I next consider whether this court should apply Pennsylvania law, which provides full compensation to victims of tortious conduct, or Michigan law which caps recovery for noneconomic loss at $280,000.

Defendant contends that where both the injured party and the defendant are residents of a state with a $280,000 maximum for recovery of noneconomic damages, the policies of that state are significant. They overshadow Pennsylvania's interests in encouraging the production of safe automobiles by fully compensating any party injured by an unsafe product for his or her actual losses.

In determining whether to apply Pennsylvania law awarding full compensation or Michigan law capping recovery for noneconomic loss at $280,000, I initially consider defendant's argument that there is no true conflict. I disagree. A purpose for Pennsylvania law awarding full compensation to persons injured by defective products is to encourage manufacturers to design, manufacture, and sell only products which are safe.[1] These policies conflict with Michigan's policy of capping damages in order to encourage the manufacture of products within Michigan.

In tort litigation, the Pennsylvania courts ordinarily apply the law of the place where the injury occurred. If the injury occurred in Pennsylvania, Pennsylvania will apply its own law: *Laconis v. Burlington County Bridge Commission,* 400 Pa. Super. 483, 583 A.2d 1218 (1990). If the injury occurred out of state, Pennsylvania will apply the law of that state even if the law is detrimental to a Pennsylvania resident suing in Pennsylvania. *Cipolla v. Shaposka,* 439 Pa. 563, 267 A.2d 854 (1970). The only exception appears to be where the state in which the injury occurred has a lack of interest in the measure of damages to be recovered. *Griffith v. United Air Lines Inc.,* 416 Pa. 1, 203 A.2d 796 (1964).

In *Miller v. Gay,* 323 Pa. Super. 466, 470 A.2d 1353 (1983), a Delaware passenger sued the Pennsylvania driver of the same vehicle to recover damages for injuries suffered in a Delaware accident. The Superior Court

---

1. Pennsylvania also has an economic interest, which it actively promotes, of having out-of-state residents visit Pennsylvania. This interest is furthered by providing the same protections to its visitors that it provides to its residents.

affirmed the trial court's dismissal of the case because of the Delaware Guest Statute. The Superior Court applied Delaware law because it found that there was no significant relationship to Pennsylvania to justify an exception to the rule of the Restatement that the law of the state of the injury applies unless some other state has a more significant relationship. The court distinguished *Griffith* on the ground that the relationship between the plaintiff and defendant was centered in Delaware. It stated that "certainty, predictability and uniformity of result will be aided by the application of Delaware law." *Id.* at 472, 470 A.2d at 1356.

In *Harsh v. Petroll,* 840 A.2d 404 (Pa. Commw. 2003), the Commonwealth Court considered a fact situation very similar to the fact situation in this case. Three occupants of a Chevrolet were killed in an automobile accident in Pennsylvania. The estates of the deceased sued General Motors in Pennsylvania based on allegations that General Motors was negligent by failing to design and manufacture a crashworthy vehicle and that General Motors is strictly liable for injuries resulting from its design, manufacture, and assembly of this vehicle.

The three occupants who died in the accident were Virginia residents. The automobile had been purchased in Virginia. Each of the estates was opened in Virginia. General Motors requested the Pennsylvania trial court to apply Virginia law (which limited General Motors' exposure); however, the trial court applied Pennsylvania law. The ruling was affirmed by the Commonwealth Court.

The Commonwealth Court cited with approval the reasoning of the lower court that the only relationship

that ever existed between the parties arose out of the accident which occurred in Pennsylvania and that the law of the state where the death occurred is given great deference under section 175 of the Restatement (Second) of Conflicts of Law (which provides that in a wrongful death action the law of the state where the death occurred determines the rights and liabilities of the parties unless another state has a more significant relationship to the occurrence and to the party), 840 A.2d at 418. The Commonwealth Court also cited *Laconis v. Burlington County Bridge Commission, supra,* for the proposition that "the state where the injury occurred was to be given great deference." *Id.*

The court rejected General Motors' argument that Virginia had the most significant contacts to the plaintiff's claim stating:

"Although GM wants Virginia law to apply so as to allow for an outcome in its favor, just because the Harsh family resided in Virginia, their Chevrolet Lumina was purchased in Virginia, one named plaintiff is a citizen of Virginia, and three of the plaintiffs opened up their estates in that state, those contacts are not sufficient to change the trial court's determination because the accident and three deaths occurred in Pennsylvania." *Id.* at 419.

The rulings of the Pennsylvania appellate courts, including the recent ruling of the Commonwealth Court in *Harsh,* are consistent with choice of law rules set forth in the Restatement (Second) of Conflicts of Law. Section 146 of the Restatement (Second) provides that in an action for personal injury, the local law of the state where the injury occurs determines the rights and liabilities of

the parties unless, with respect to a particular issue, some other state has a more significant relationship under the principles stated in section 6 of the Restatement (Second).[2] Comment c to section 146 provides that the likelihood "that some state other than where the injury occurred is the state of most significant relationship is greater in those relatively rare situations where, with respect to a particular issue, the state of injury bears little relation to the occurrence and the parties." This comment states that a rule applying the local law of the state where the injury occurred "furthers the choice-of-law values of certainty, predictability and uniformity of result and, since the state where the injury occurred will usually be readily ascertainable, of ease in the determination and application of applicable law (see section 6)."

Comment e of section 146 addresses the situation where the conduct and injury occur in different states. It states that the law of the state of injury will usually be applied to determine most issues involving the tort. This comment further states that the law of the state of injury may not apply where the law of the state in which the conduct occurred is intended to punish the tort-feasor and, thus, to deter others from following the tort-feasor's example. However, where the purpose to be achieved by a rule of tort law of the state in which the conduct occurred is not to deter, the comment states that the local law of the state where the injury occurred would seem to have a greater interest.

---

2. While *Harsh* was governed by section 175 of the Restatement Second), the comments to section 175 are almost identical to the comments to section 146.

I recognize that comment e states that where the injured party resides in the state where the conduct occurred, there is greater likelihood that this state will be the state of most significant relationship. However, in the present case, even though plaintiffs resided in the state of the defendant's principal place of business, no relationship occurred within Michigan. Defendant does not target Michigan purchasers and only a small percent of its sales are made to Michigan residents. Thus, it was fortuitous that the persons injured in Pennsylvania resided in the state where defendant had its principal place of business. As in *Harsh,* the only relationship that ever existed between the parties arose out of the accident which occurred in Pennsylvania.

In summary, in personal injury actions, the Pennsylvania courts, in the absence of exceptional circumstances *(i.e., Griffith),* apply the law of the state where the injury occurred. On the basis of this case law, I enter the following order of court:

## ORDER

On November 18, 2004, it is hereby ordered that defendant's motion for partial summary judgment is denied.