628 A.2d 1159

Joshua MILES, Appellee,

v.

George William VAN METER and Greenfield Trans. Co., Inc.

Appeal of PENNSYLVANIA WORKERS COMPENSATION
SECURITY FUND.

Superior Court of Pennsylvania.

Argued April 1, 1993.

Filed July 26, 1993.

L. Rostaing Tharaud, Philadelphia, for appellant.

Norman R. Segal, Philadelphia, for Miles, appellee.

Michael T. McDonnell, Philadelphia, for Van Meter and Greenfield Trans., appellee.

Before TAMILIA, POPOVICH and CERCONE, JJ.

POPOVICH, Judge:

This is an appeal from the order entered in the Court of Common Pleas of Philadelphia County granting the petition of appellee, Joshua Miles, to settle with the Iowa Insurance Guaranty Association ("IIGA"), free and clear of a subrogation lien asserted by appellant, Pennsylvania Workers' Compensation Security Fund ("PWCSF"). We are presented with a question of first impression: whether PWCSF may assert a subrogation lien against a claimant's recovery from an out-of-state insurance guaranty association which is responsible for the outstanding tort claims against an insolvent liability insurance carrier. Upon review, we vacate the lower court's order and permit PWCSF to assert its subrogation lien.

We recount the relevant history of this case as follows: On October 6, 1981, while employed by Midwest Emery Freight Systems, Inc. ("Midwest Emery"), Joshua Miles, a Pennsylvania resident, was injured in the scope of his employment at a Pennsylvania Turnpike rest area near Harrisburg when his truck was struck from the rear by a Greenfield Transportation Company ("Greenfield") truck which was operated by George Van Meter. Greenfield is an Iowa company.[1]

Because the accident occurred in the course of his employment, Midwest Emery's workmen's compensation carrier, Carriers Insurance Co., began to disburse funds to Miles. However, Carriers became insolvent. Appellant, PWCSF, assumed responsibility of the workmen's compensation benefits to Miles. Miles received $130,000.00 in workmen's compensation benefits.

Greenfield and Van Meter were insured at the time of the accident by Excalibur Insurance Company. While Miles' suit against Greenfield and Van Meter was pending, Excalibur became insolvent, and IIGA assumed its responsibilities.

Prior to trial, IIGA and Miles agreed to value Miles' damages at $230,000.00. Further, IIGA asserted it was entitled to a credit of $130,000.00, reflecting the compensation already paid by Carriers and PWCSF. Thus, IIGA offered to convey $100,000.00 in actual settlement dollars to Miles.

Miles agreed to this arrangement, provided he was able to avoid a subrogation lien asserted by PWCSF on the $130,-000.00, which he had received in workmen's compensation benefits. Miles petitioned the court below for leave to settle free and clear of PWCSF's subrogation lien. In its order entered October 1, 1992, the lower court granted Miles' petition. PWCSF subsequently brought this appeal.

PWCSF contends that the lower court committed an error of law in ruling that it was not entitled to assert a subrogation lien on the settlement between IIGA and Miles.

1. Greenfield and Van Meter have jointly filed a brief in support of the lower court's order granting Miles' petition to settle with IIGA free and clear of PWCSF's subrogation lien.

Initially, we find that the court below properly determined that Pennsylvania law applies to this case rather than Iowa law.[2] However, after carefully examining appellant's argument, we hold that the lower court erred in its analysis and application of Pennsylvania law. We find that PWCSF can assert its subrogation lien.

In granting Miles' petition to settle with IIGA, free and clear of a subrogation lien asserted by PWCSF, the lower court focused its analysis on the following three statutes: the Pennsylvania Workmen's Compensation Act, 77 P.S. § 1 et seq., the Pennsylvania Insurance Guaranty Association Act, 40 P.S. § 1701.101 et seq. (the "PIGA Act") and the Iowa Insurance Guaranty Association Act, Iowa Code Chapter 515B (the "IIGA Act"). The court below initially recognized that pursuant to the Pennsylvania Workmen's Compensation Act, 77 P.S. § 671, an employer, or the employer's insurer, ordinarily has the right to assert a subrogation lien for the amount of workers' compensation it paid, against compensation recovered by an insured from a third party. The lower court then found, "PWCSF may ordinarily have the right to assert the same subrogation lien as an employer, [but] circumstances are altered where the third party from which the insured obtains recovery is an insurance guaranty association such as IIGA, which has taken over the obligations of the third party's insolvent insurer." Trial Court Opinion, p. 3. The court

---

**2.** In analyzing the choice of law issue, the lower court was guided by our court's decision in *Laconis v. Burlington County Bridge Commission*, 400 Pa.Super. 483, 583 A.2d 1218 (1990). In that case, we held that under principles of comity, rights and liabilities of parties in tort actions are determined by the law of the state with the most significant relationship to the occurrence and the parties. *Id.* at 490–93, 583 A.2d at 1222–23. In light of our court's decision in *Laconis*, the court below found as follows:

Here, Miles is a Pennsylvania resident, PWCSF is a Pennsylvania entity, and the accident occurred in Pennsylvania. The amounts paid by PWCSF were determined by Pennsylvania law, and any right PWCSF has to a subrogation lien is similarly created by Pennsylvania law. Although IIGA's involvement in this action is based on a contract between an Iowa insurer and an Iowa defendant, Pennsylvania has more significant connections to this action. Pennsylvania law will, therefore, apply.

Trial Court Opinion, p. 2.

below determined that the PIGA Act and the IIGA Act "[were] created to protect persons who find that the insolvency of their liability insurance carrier leaves them exposed to suits by injured parties, as well as injured parties whose attempts at recovery may be frustrated by the insolvency of a tortfeasor's liability insurance carrier." Trial Court Opinion, p. 3. The lower court concluded that it would be counterproductive to allow one agency to seek reimbursement from the other by asserting a subrogation lien. Trial Court Opinion, p. 4.

In pertinent part, § 671 of the Pennsylvania Workmen's Compensation Act provides as follows:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer.... Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future instalments of compensation.

77 P.S. § 671.

Our courts have construed § 671 to include subrogation rights not only to an employer but also to an insurer of the employer. *See Reliance Ins. Co. v. Richmond Machine Co.*, 309 Pa.Super. 430, 434, 455 A.2d 686, 688 n. 4 (1983) (the law is clear that an insurer of the employer may sue to enforce its subrogation rights under 77 P.S. § 671); *Bumbarger v. Bumbarger*, 190 Pa.Super. 571, 155 A.2d 216 (1959) (insurance carrier entitled to subrogation rights for compensation payments made to employee).

Here, Carriers Insurance Co. was the workmen's compensation carrier for the employer of Miles. Carriers began to distribute funds to Miles but then became insolvent. PWCSF

thus assumed responsibility of the workmen's compensation benefits to Miles.

■ Section 1061(4) of the Pennsylvania Workmen's Compensation Act states, "[t]he commissioner shall be entitled to recover the sum of all liabilities of such insolvent carrier assumed by the fund from such carrier ... and all others ... liable under any of the terms of the Workmen's Compensation Law, and may prosecute an action or other proceedings therefor." 77 P.S. § 1061(4). We find that when PWCSF assumed the responsibility of disbursing funds to Miles, it also became entitled to subrogation rights afforded under 77 P.S. § 671. *Cf. Mayhugh v. Somerset Tel. Co.*, 265 Pa. 496, 109 A. 213 (1920) (state workmen's insurance fund is entitled to be subrogated to the rights of the employer).

Having determined that PWCSF has subrogation rights under 77 P.S. § 671, we next address the question of whether PWCSF may enforce those rights against an insurance guaranty association. In scrutinizing the aforesaid question, we are guided by the language of the PIGA Act, 40 P.S. § 1701.-101 et seq.

Appellees, Miles, Van Meter and Greenfield, maintain that PWCSF's subrogation lien is not enforceable on the basis that it is not a "covered claim" pursuant to the language of 40 P.S. § 1701.103(5)(a) and (b). Those sections provide as follows:

(5)(a) **"Covered claim"** means an unpaid claim, including a claim for unearned premiums, *which arises under a property and casualty insurance policy* of an insolvent *insurer* and is:

(i) The claim of a person who at the time of the insured event resulting in loss or liability was a resident of this Commonwealth, or

(ii) A claim arising from an insured event resulting in loss or liability to property which was permanently situated in this Commonwealth.

(b) A covered claim shall not include any amount due any *insurer*, reinsurer, insurance pool, or underwriting association, as a subrogation recovery or otherwise.

40 P.S. § 1701.103(5)(a) and (b) (emphasis added).

 Here, PWCSF did disburse workmen's compensation funds to Miles. However, PWCSF is not an "insurer" under the terms of the PIGA Act, and workmen's compensation payments are not used to reduce the amount of a "covered claim" under the PIGA Act. We direct our attention to the "definitions" section of the PIGA Act, 40 P.S. § 1701.103. Sections 1701.103(2) and (3) provide as follows:

**(2) "Insurer" or "member insurer"** means any insurance company, association or exchange which is authorized to write and is engaged in writing within this Commonwealth, on a direct basis, *property and casualty insurance policies.*

**(3) "Property and casualty insurance policy"** means any contract, including any endorsement, rider, binder (written or oral), cover note, certificate or other instrument of insurance attached or relating thereto, without regard to the nature of the form of the same, which provides any of the coverages enumerated in section 202, act of May 17, 1921 (P.L. 682, No. 284), known as "The Insurance Company Law of 1921," as amended *except:*

(i) Life insurance and annuities;

(ii) Health and accident insurance;

(iii) Title insurance;

(iv) Credit insurance on accounts receivable;

(v) Mortgage guaranty insurance;

(vi) Surety insurance;

(vii) Ocean marine insurance; and

*(viii) Workmen's compensation insurance.*

40 P.S. § 1701.103(2) and (3) (emphasis added). Upon focusing our analysis on the definitions, *"property and casualty insurance policy"* and *"insurer"* which are incorporated within the language of 40 P.S. § 1701.103(5)(a) and (b), we find the contention that PWCSF's subrogation lien reduces the amount

of a "covered claim" lacks substance since this assertion presupposes that workmen's compensation insurance carriers participate in PIGA and workmen's compensation claims are paid by PIGA.[3] However, workmen's compensation insurance is expressly excluded from the coverage of the PIGA Act, and we conclude that under Pennsylvania law, PWCSF could even enforce a subrogation lien against PIGA. The obligations of PIGA and PWCSF are not in any way coextensive or interdependent. Indeed, the avoidance of subrogation liens of workmen's compensation carriers in general is not provided for by the PIGA Act.[4]

**3.** Contrary to the decision of the United States District Court, E.D. Pennsylvania in *Pennsylvania Ins. Guar. Ass'n v. Charter Abstract Corp. v. Safeco Title Ins. Co.,* 790 F.Supp. 82 (1992), we find that the legislature intended the definitions, *"property and casualty insurance policy"* and *"insurer"* to be read inclusively of one another. In *Safeco,* the Eastern District Court of Pennsylvania found as follows,

> The definition of property and casualty insurance is aimed at defining those categories of insurance which the Act intends to protect, and it does not appear that the legislature intended that definition to be read with the definition of insurer and limit the entities which may make claims under the Act. Had the legislature intended intended to so limit the definition of insurer, it could have done so.

*Id.* at 87. The court concluded that carriers of excluded insurance under the definition of *"property and casualty insurance policy"* are still deemed insurers for purposes of the guaranty acts and may not recover from the funds. *Id.* at 87. We reject that definitional analysis of the Eastern District Court of Pennsylvania. Indeed, *"insurer"* is defined clearly as "any insurance company ... which is authorized to write and is engaged in writing within this Commonwealth, on a direct basis, *property and casualty insurance policies."* 40 P.S. § 1701.103(2) (emphasis added). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Donegal Mutual Ins. Co. v. Long,* 528 Pa. 295, 300, 597 A.2d 1124, 1127 (1991), *quoting,* 1 Pa.C.S. § 1921(b). *See Beyer's Cement, Inc. v. North Dakota Ins. Guar. Ass'n,* 417 N.W.2d 370 (N.D. 1987) (worker's compensation board is not an "insurer" under North Dakota Insurance Guaranty Association Act, and thus the state Insurance Guaranty Association was statutorily obligated to pay subrogation claim of worker's compensation board).

**4.** Upon reviewing the "purposes" section of the PIGA Act, 40 P.S. § 1701.102, we are convinced further that the PIGA Act is not applicable to workmen's compensation insurance. Section 1701.102 states as follows:

**§ 1701.102. Purposes**
The purposes of this act are:

■ Alternatively, appellees suggest that our court should be guided by the language of the IIGA Act, Iowa Code Chapter 515B, on the grounds that the IIGA Act is a uniform national law. However, after closely examining the language of the IIGA Act, we find that the IIGA Act's coverage with respect to workmen's compensation insurance is *clearly* distinct from the coverage provided under the PIGA Act. As appellees, Van Meter and Greenfield, acknowledge, the IIGA Act includes workmen's compensation insurance within its scope. Under Iowa law, there is no separate fund comparable to the Pennsylvania Workmen's Compensation Act for payment of claims against insolvent workmen's compensation insurers. Rather, IIGA pays those claims.[5]

Clearly, Iowa and Pennsylvania have different schemes for managing workmen's compensation claims against insolvent carriers. Because Pennsylvania law and Iowa law address workmen's compensation insurance differently, we are not persuaded by appellees' suggestion that our court should give deference to the language of the IIGA Act. As determined above, Pennsylvania law controls in this case.

The Pennsylvania Workmen's Compensation Act expressly grants subrogation rights for workmen's compensation payments. 77 P.S. § 671. Further, the Pennsylvania Workmen's Compensation Act and the PIGA Act are both devoid of any language precluding the PWCSF from asserting a subrogation lien against PIGA or any similar entity.

■ Appellees assert that it would be against public policy and also counterproductive to allow recoveries against an

(1) To provide a means for the payment of covered claims *under certain property and casualty insurance policies,* to avoid excessive delay in the payment of such claims, and to avoid financial loss to claimants or policyholders as a result of the insolvency of an *insurer;*
(2) To assist in the detection and prevention of *insurer* insolvencies; and
(3) To provide for the formulation and administration by The Pennsylvania Insurance Guaranty Association of a plan of operation necessary to effectuate the provisions of this act.

5. IIGA has no provision for subrogation of the workmen's compensation payments it makes since it would simply be paying itself.

insurance guaranty association, a "state agency", which has taken over the obligations of insolvent insurers. At first glimpse, we might be inclined to agree with that assertion. However, upon close examination of the composition and nature of an insurance guaranty association in relationship to that of PWCSF, we reject appellee's argument. PIGA's membership is composed of independent property and casualty insurers within the Commonwealth. 40 P.S. § 1701.201(a). PIGA's function is essentially to redeem the role of a property and casualty insurer which becomes insolvent and make payment of covered claims. 40 P.S. § 1701.201(b)(1)(i). On the other hand, PWCSF's survival depends upon the required funding from stock companies, mutual carriers and reciprocal exchanges which are authorized to transact workmen's compensation insurance in the Commonwealth. 77 P.S. § 1053. PWCSF's function is to assure claimants workmen's compensation payments from employers insured by insolvent stock companies, insolvent mutual carriers, insolvent reciprocal exchanges, or the State Workmen's Insurance Fund. 77 P.S. § 1053. PIGA and PWCSF manage separate and distinct insurances. Since we are of the opinion that PWCSF may even enforce its right of subrogation against PIGA, we, also, find that this right is enforceable against IIGA.

> The right of subrogation is founded on principles of equity which seek (1) to prevent double recovery for the same injury by a claimant, (2) to ensure that the employer is not compelled to make compensation payments necessitated by the negligence of a third party, and (3) to prevent a third party tortfeasor from escaping liability for his negligence.

*Schramm v. Sanitation Authority*, 131 Pa. Commonwealth Ct. 126, 131, 569 A.2d 994, 996 (1990), *affirmed*, 532 Pa. 494, 616 A.2d 614 (1992), *quoting*, *Helms Express v. Workmen's Compensation Appeal Board (Lemonds)*, 106 Pa. Commonwealth Ct. 287, 291, 525 A.2d 1269, 1271 (1987).

A review of the record reveals that prior to trial, IIGA and Miles agreed to value Miles' damages at $230,000.00. Further, both agreed that IIGA was entitled to a credit of $130,000.00 reflecting, the compensation already paid by Car-

riers and PWCSF. Thus, IIGA offered to convey $100,000.00 in actual settlement dollars to Miles. Miles agreed to this arrangement, subject to his ability to avoid PWCSF's subrogation lien on the $130,000.00 he received in workmen's compensation benefits.

If we were to conclude that PWCSF has no right to assert a subrogation lien in this case, we would, in effect, condone the practice of PWCSF being an insurer for other insurance guaranty associations. The viability of PWCSF would be in jeopardy if insurance guaranty associations are permitted to avoid their liability for property and casualty insurance payments by denying PWCSF its subrogation lien. To rule otherwise could deplete the funds available for the distribution of workmen's compensation payments, 77 P.S. § 1053. Consequently, in order to ensure that adequate workmen's compensation funds are available, we find it necessary to insure PWCSF has subrogation rights against insurance guaranty associations.

Accordingly, the lower court committed an error of law in ruling that PWCSF was not entitled to assert a subrogation lien on the settlement between IIGA and Miles.

We vacate the lower court's order and remand for further proceedings in accordance with this opinion. Jurisdiction relinquished.