**RELIANCE INSURANCE COMPANY IN LIQUIDATION, Plaintiff**

v.

**ARAMARK CORPORATION, General Security National Insurance Company, and Munich Reinsurance American, Inc., Defendants.**

Commonwealth Court of Pennsylvania.

Argued May 11, 2011.

Decided Dec. 9, 2011.

Helen M. Braverman, Philadelphia, for plaintiff.

Stephen A. Cozen, Philadelphia, for defendant Aramark Corporation.

Jayne Y. Risk, Philadelphia, and Stephen W. Schwab, Chicago, IL, for defendant General Security National Insurance Company.

Gregory P. Deschenes, Boston, MA, for intervenors Guaranty Associations.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge COHN JUBELIRER.

Reliance Insurance Company in Liquidation (Liquidator) has petitioned this Court for a declaratory judgment that Aramark Corporation[1] (Aramark) must reimburse various state guaranty associations for amounts the guaranty associations paid out on Aramark's behalf and for which the guaranty associations have now presented proofs of claim to the estate (Estate) of Reliance Insurance Company (Reliance). Liquidator, as administrator of the Estate, seeks reimbursement from Aramark for the claims paid by the guaranty associations that allegedly were covered by a $25 million contingent liability policy (CLP) under which Aramark was insured by Inter-Ocean Reinsurance Company Ltd. (Inter-Ocean). Intervenors, California Insurance Guarantee Association (CA GA), Massachusetts Insurers Insolvency Fund (MA Fund), Nevada Insurance Guaranty Association (NV GA), New Hampshire Insurance Guaranty Association (NH GA), New Jersey Property-Liability Insurance Guaranty Association (NJ GA),[2] New York Property/Casualty Insurance Security Fund (NY Fund), New York Workers' Compensation Security Fund (NY WC), Pennsylvania Workers' Compensation Security Fund (PA WC), and Texas Property and Casualty Insurance Guaranty Association (TX GA) (collectively, Guaranty Associations), seek to recoup approximately $8 million in claims paid on Aramark's behalf upon Reliance's insolvency because the Guaranty Associations allege that these claims are covered by the CLP. Essentially, Liquidator and the Guaranty Associations argue that Aramark is receiving a windfall, or double-dipping, by submitting claims to the Estate through the Guaranty Associations while simultaneously collecting the present value of the CLP from Inter-Ocean, which was intended to cover these same claims. Before this Court are Aramark's Preliminary Objections (P.O.s) to Liquidator's Complaint for Declaratory Judgment (P.O.s to Liquidator's Complaint) and

---

1. General Security National Insurance Company and Munich Reinsurance American, Inc. are also named in Liquidator's Complaint; however, the claims at issue against these defendants are not at issue in the preliminary objections now before this Court.

2. Prior to 2009, New Jersey workers' compensation claims were paid by the New Jersey Workers' Compensation Fund (NJ WC). In 2009, the New Jersey legislature transferred the "powers and duties" of the NJ WC to the NJ GA. N.J. Stat § 34:15–105.1.

Aramark's P.O.s to Guaranty Associations' Complaint (P.O.s to GAs' Complaint).

■ The facts before this Court are as follows.[3] Reliance was a Pennsylvania insurance company that this Court declared insolvent on October 3, 2001. It was placed into liquidation under the Liquidator's oversight pursuant to The Insurance Department Act of 1921 (Insurance Department Act).[4] Aramark is a corporation employing approximately 250,000 employees and provides managed hospitality, food, and facility services to a variety of clients. Prior to its liquidation, Reliance sold Aramark policies covering general liability, automobile liability, and workers' compensation liability. In 1999, Aramark became concerned about Reliance's ability to cover future claims by Aramark. In response, Reliance suggested that Aramark purchase the CLP from Inter–Ocean, which would pay any claims not paid by Reliance. The CLP was subject to $25 million in aggregate limits and was backed by over $25 million in collateral from Reliance, which Reliance placed in escrow with Inter–Ocean.

When Reliance went into liquidation, Aramark had a number of claims outstanding against Reliance, some of which Aramark sought to recover by filing claims under the CLP. Inter–Ocean paid approximately $1.5 million in claims to Aramark. A dispute arose between Inter–Ocean and Aramark regarding Aramark's claims under the CLP, and actions were filed in the Philadelphia County Court of Common Pleas and the Supreme Court of Bermuda regarding these disputes. On July 1, 2003, Aramark and Inter–Ocean settled their dispute through a Commutation and Release Agreement under which Inter–Ocean paid Aramark $19.2 million to fully discharge Inter–Ocean's obligations under the CLP. Thus, Aramark received a total of $20.7 million from Inter–Ocean under the CLP, all of which was paid from the collateral supplied by Reliance.

Aramark has claims against the Estate arising from "virtually every state in the nation." (Liquidator's Compl. ¶ 32.) Valid claims under an insolvent insurer's policy are paid by state guaranty associations,[5] which then submit the claims to the Estate. Such claims are usually categorized as Class B claims.[6] "Claims which are not

---

3. Because this case is before our Court on preliminary objections, the facts in this opinion are taken from Liquidator's and Guaranty Associations' Complaints. "When reviewing orders disposing of preliminary objections, our standard is clear: well-pled factual averments of the complaint are admitted; conclusions of law are not." *Arbor Resources LLC v. Nockamixon Township*, 973 A.2d 1036, 1042 n. 5 (Pa.Cmwlth.2009).

4. Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. §§ 22–326.7.

5. It is not clear from the filings whether the Guaranty Associations comprise all state guaranty associations for whom Liquidator seeks reimbursement. Therefore, the term "Guaranty Associations" is used to refer only to those state guaranty associations which have intervened in the present litigation.

6. Section 544(b) of the Insurance Department Act provides:

The order of distribution of claims from the insurer's estate shall be in accordance with the order in which each class of claims is herein set forth. . . . .

. . . .

(b) All claims under policies for losses wherever incurred, including third party claims, and all claims against the insurer for liability for bodily injury or for injury to or destruction of tangible property which are not under policies, shall have the next priority. All claims under life insurance and annuity policies, whether for death proceeds, annuity proceeds, or investment values shall be treated as loss claims. That portion of any loss, indemnification for which is provided by other benefits or advantages recovered by the claimant, shall not be included in this class, other than

covered by a guaranty association or portions of claims which exceed the statutory obligations of the guaranty association" are paid by the Estate. (Liquidator's Compl. ¶ 33.) State guaranty association statutes require Aramark to exhaust its ability to recover under other policies and prohibit duplicate recovery of claims. Nevertheless, Aramark has received approximately $8 million in payments on claims made to state guaranty associations. In addition, Aramark has filed approximately 300 Class B claims directly against the Estate.

On September 23, 2008, Liquidator filed the current action for declaratory judgment pursuant to the Declaratory Judgments Act.[7] In its Complaint, Liquidator argues that, because Aramark only has paid approximately $8.7 million in claims covered by the Reliance policies, Aramark should have to exhaust the remaining $16.3 million in coverage under the CLP before it may seek further recovery from state guaranty associations or the Estate.[8] In addition, Liquidator argues that the claims Aramark filed against the Estate should be assigned Class G[9] status rather than Class B status. Liquidator also seeks a declaration that Aramark should repay to

state guaranty associations the approximately $8 million paid by such associations for claims which were covered by the CLP. On November 14, 2008, Aramark filed its P.O.s to Liquidator's Complaint.

■ On February 3, 2010, the Guaranty Associations filed their Petition to Intervene, which this Court granted by Order dated March 1, 2010. *Pratter v. Aramark* (Pa.Cmwlth. No. 460 M.D.2008, filed March 1, 2010). On March 4, 2010, the Guaranty Associations filed their Complaint. In their Complaint, the Guaranty Associations sought declaratory judgments that Aramark must exhaust the $25 million coverage under the CLP and that Aramark must reimburse the Guaranty Associations over $8 million for the claims paid by the Guaranty Associations that were covered by the CLP. The Guaranty Associations also articulated a claim for unjust enrichment with regard to the $8 million in claims paid. The Guaranty Associations' Complaint alleged facts substantially similar to those alleged in Liquidator's Complaint. On March 26, 2010, Aramark filed the P.O.s to GAs' Complaint. Aramark's P.O.s to both Complaints, which are described below, are now before this Court.[10, 11]

---

benefits or advantages recovered or recoverable in discharge of familial obligations of support or by way of succession at death or as proceeds of life insurance, or as gratuities. No payment made by an employer to his employee shall be treated as a gratuity. 40 P.S. § 221.44(b). This section was added by Section 2 of the Act of December 14, 1977, *as amended.*

7. 42 Pa.C.S. §§ 7531–7541.

8. Aramark, for its part, argues that some of the claims it has paid, particularly workers' compensation claims, are not covered by the CLP.

9. Pursuant to Section 544(g)(3) of the Insurance Department Act, Class G claims include, *inter alia,* "[c]laims or portions of claims,

[the] payment of which is provided by other benefits or advantages recovered by the claimant." 40 P.S. § 221.44(g)(3).

10. "In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them." *GTECH Corporation v. Department of Revenue,* 965 A.2d 1276, 1284 (Pa.Cmwlth. 2009).

11. Also before this Court for disposition are the Application of Liquidator for Leave to File a Post–Argument Submission (Liquidator's Application), and the Guaranty Associations' Application for Leave to File Post–Argument Submission (Guaranty Associations' Application). Aramark filed an Answer in Opposition

With regard to Liquidator's Complaint,[12] Aramark's P.O.s are that: (1) Liquidator's claim to assign Class G status to Aramark's claims must be dismissed for failure to exhaust a statutory remedy;[13] (2) Liquidator does not have standing to assert claims for repayment to state guaranty associations;[14] and (3) all the state guaranty associations must be joined as indispensable parties to Liquidator's claims for repayment to the state guaranty associations.[15] With regard to the Guaranty Associations' Complaint,[16] Aramark's P.O.s assert that: (1) certain of the Guaranty Associations are not permitted by their governing statutes to seek reimbursement for claims paid to Aramark;[17] (2) certain of the Guaranty Associations' non-duplication of recovery statutes are not applicable to Aramark's recovery from the CLP in this case;[18] (3) Aramark is not required to exhaust the full $25 million coverage limits under the CLP under statutes governing certain of the Guaranty Associations;[19] and (4) certain of the Guaranty Associations lack capacity or standing to bring suit.[20,21]

---

to Liquidator's Application. Given that this Court has already granted Aramark's Application for Leave to File Post–Argument Supplemental Authority, we see no harm in granting, nor do we believe it is improper to grant, the similar applications by Liquidator and the Guaranty Associations. We have, therefore, considered the post-argument submissions filed by the Liquidator and the Guaranty Associations to the extent relevant to this opinion.

**12.** In addition to the P.O.s discussed in detail, Aramark, in its sixth P.O. to Liquidator's Complaint, also argues that Liquidator's Complaint is insufficiently specific, pursuant to Pennsylvania Rules of Civil Procedure (Pa. R.C.P.) No. 1028(a)(3), to allow Aramark to prepare a defense. (P.O.s to Liquidator's Complaint ¶¶ 95–104.) Upon reviewing the allegations in Liquidator's Complaint, we disagree. Liquidator's Complaint pleads sufficient *facts* to prove that it is entitled to the declaratory judgment it seeks. Moreover, we note that Aramark has also objected that the pleadings, if true, are legally insufficient, which is an objection inconsistent with its argument that Liquidator's Complaint is not sufficiently specific. *Commonwealth v. Peoples Benefit Services, Inc.*, 895 A.2d 683, 691 (Pa.Cmwlth.2006) (stating that "it is inconsistent for a party to both demur to a pleading and, at the same time, move for a more specific pleading ... if a party is able to demur, then the pleading must be specific enough for the party to understand the allegations contained therein") (citing *Speck v. Finegold*, 268 Pa.Super. 342, 408 A.2d 496, 501 n. 10 (1979), *rev'd in part on other grounds*, 497 Pa. 77, 439 A.2d 110 (1981)).

**13.** (P.O. to Liquidator's Complaint III ¶¶ 47–64.)

**14.** (P.O. to Liquidator's Complaint I ¶¶ 9–23.)

**15.** (P.O. to Liquidator's Complaint II ¶¶ 24–46.)

**16.** Aramark raises similar P.O.s with regard to Liquidator's Complaint as it does to Guaranty Associations' Complaint; however, the P.O.s to Liquidator's Complaint were filed before the Guaranty Associations intervened. Because the P.O.s are addressed with greater specificity with regard to the Guaranty Associations' Complaint, we do not redundantly address them in association with the Liquidator's Complaint.

**17.** (P.O. to GAs' Complaint I, II, IV, VII, IX, XI, XV, XX, XXIII ¶¶ 10–18, 41–47, 61–71, 94–108, 116–21, 128–44, 169–84, 224–39, 263–84; P.O. to Liquidator's Complaint IV ¶¶ 80–94.)

**18.** (P.O. to GAs' Complaint II, III, VIII, XII, XVI, XXI, XXIV ¶¶ 19–40, 48–60, 109–15, 145–53, 185–95, 240–54, 285–93; P.O. to Liquidator's Complaint V ¶¶ 65–79.)

**19.** (P.O. to GAs' Complaint V, XIII, XVII, XXII ¶¶ 72–79, 154–61, 196–201, 255–62; P.O. to Liquidator's Complaint VII ¶¶ 105–13.)

**20.** (P.O. to GAs' Complaint VI, X, XIV, XVIII, XVIX ¶¶ 80–93, 122–27, 162–68, 202–23.)

**21.** Aramark also objects to the Guaranty Associations' requests for attorneys' fees, stating

■ We first address P.O. to Liquidator's Complaint III: that Liquidator's claim to assign Class G status to Aramark's claims must be dismissed for failure to exhaust a statutory remedy pursuant to Pa. R.C.P. No. 1028(a)(7). Sections 537 through 544 of the Insurance Department Act, 40 P.S. §§ 221.37–.44, provide a procedure for the filing and classification of claims in an insurance company liquidation. In addition, this Court issued an order on February 8, 2002 establishing a filing procedure for claims and a dispute resolution process for claims in the liquidation of Reliance. *Koken v. Reliance* (Pa. Cmwlth. No. 269 M.D.2001, filed Feb. 8, 2002). On September 9, 2002, this Court amended the February 8, 2002, order and directed that all claims against the Estate be filed through a Proof of Claim by December 31, 2003. *Koken v. Reliance* (Pa. Cmwlth. No. 269 M.D.2001, filed Sept. 9, 2002). On December 12, 2008, this Court issued three additional case management orders regarding: the procedures for filing and service; procedures for dispositions of proofs of claim; and the master service list. *Koken v. Reliance* (Pa.Cmwlth. No. 269 M.D. 2001, filed Dec. 12, 2008).

Liquidator argues that the Insurance Department Act "grants broad powers to the [Liquidator] to fix the rights and liabilities of claims as of a date certain … and to do such acts as may be necessary *or expedient* to accomplish liquidation." *Foster v. Colonial Assurance Co.*, 668 A.2d 174, 184 (Pa.Cmwlth.1995) (emphasis added). Among the powers of the Liquidator is the power to accept or reject proofs of

claim and to establish the rights of policyholders relative to one another. Sections 520(d), 523, and 541 of the Insurance Department Act, 40 P.S. §§ 221.20(d), 221.23, 221.41.[22] Liquidator argues that by filing the instant claim it has effectively stated that, in its judgment, the approximately 300 Class B claims filed by Aramark should be assigned Class G status. In addition, Liquidator argues that the interests of judicial economy would be served by deciding the status of these claims in this declaratory judgment action before this Court, rather than in a piecemeal fashion through the proof of claims process.

■ Declaratory judgment is not appropriate where the Legislature has enacted a legislative framework within which the substance of the declaratory judgment claim is to be resolved. In *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1977), our Supreme Court explained:

> [w]hen the Legislature has seen fit to enact a pervasive regulatory scheme and to establish a governmental agency possessing expertise and broad regulatory and remedial powers to administer that statutory scheme, a court should be reluctant to interfere in those matters and disputes which were intended by the Legislature to be considered, at least initially, by the administrative agency. Full utilization of the expertise derived from the development of various administrative bodies would be frustrated by indiscriminate judicial intrusions into

that such requests are without authority. (P.O. to GAs' Complaint XXV ¶¶ 294–303.) However, Aramark acknowledges that, in certain circumstances where an insurer is shown to have acted unreasonably and in bad faith, attorneys' fees have been awarded. (P.O. to GAs' Complaint XXV ¶ 301) (citing *Regis Insurance Co. v. Wood*, 852 A.2d 347, 351

(Pa.Super.2004).) Because we cannot say that the facts pleaded by the Guaranty Associations in their Complaint cannot show bad faith on Aramark's part if proven, we overrule this P.O.

22. These sections were added by Section 2 of the Act of December 14, 1977, *as amended*.

matters within the various agencies' respective domains

*Id.* at 6, 383 A.2d at 793. If administrative remedies are not exhausted, "in most administrative cases, a declaratory judg[ ]ment could be used to short-circuit the administrative process and have the law determined without the benefit of the administrative agency first reviewing the matter." *Faldowski v. Eighty Four Mining Co.,* 725 A.2d 843, 846 (Pa.Cmwlth. 1998). Even though it is, in this case, Liquidator itself who is asking this Court to grant declaratory judgment outside the established regulatory scheme, we decline to do so.

As Aramark points out, the Legislature has established a regulatory scheme whereby the priority of creditor claims on an insolvent estate may be established, i.e., Sections 537 through 544. In addition, as noted above, this Court issued orders on February 8, 2002, September 9, 2002, and December 12, 2008, addressing various procedures regarding, *inter alia,* the proof of claims process associated with claims against Reliance. *Koken v. Reliance* (Pa. Cmwlth. No. 269 M.D.2001, filed Feb. 8, 2002); *Koken v. Reliance* (Pa.Cmwlth. No. 269 M.D.2001, filed Sept. 9, 2002); *Koken v. Reliance* (Pa.Cmwlth. No. 269 M.D.2001, filed Dec. 12, 2008). Thus, the Legislature—and this Court—have already set out procedures whereby Liquidator may establish the priority of claims against the Estate. If we were to allow Liquidator to bypass the established proof of claim process, this would establish a dangerous precedent for creditors in other liquidation proceedings to attempt to bypass the proof

of claim process in the same manner. Therefore, we will sustain Aramark's preliminary objection in this regard.[23]

■ We next address P.O. to Liquidator's Complaint I: that Liquidator lacks standing to assert claims for repayment to state guaranty associations. As Aramark points out in its brief, in order to have standing to seek a declaratory judgment "a plaintiff must possess an interest which is 'direct, substantial and present, as contrasted with a remote or speculative, interest.'" *Pennsylvania Gamefowl Breeders Association v. Commonwealth,* 533 A.2d 838, 839 (Pa.Cmwlth.1987) (quoting *Kauffman v. Osser,* 441 Pa. 150, 155, 271 A.2d 236, 239 (1970)). Liquidator alleges in its Complaint that Aramark submitted claims to the state guaranty associations that reimbursed Aramark on at least some of these claims. Therefore, Liquidator argues the state guaranty associations have become creditors of the Estate and, as such, they may file claims against the Estate. (Liquidator's Compl. ¶¶ 35–36.) However, merely because the state guaranty associations may file claims against the Estate does not mean that the Estate is obligated to pay these claims. *See* 40 P.S. § 221.41 (providing a procedure through which a liquidator can deny a claim). If the state guaranty associations paid claims to Aramark erroneously, then the Liquidator may deny these claims and the guaranty associations may, if their enabling statutes allow, seek to recover such monies from Aramark. Therefore, Liquidator lacks the requisite interest to have standing to represent the interests of the

---

**23.** We note that it would be possible for one proof of claim to be filed and decided, which could then be appealed to this Court, with the remainder of the claims being held in abeyance. This would prevent the multiplicity of actions resulting from the large number of claims. In addition, Liquidator's argument

that Aramark should have to exhaust its CLP limits before it may file more proofs of claim is an issue that could be resolved through the proof of claim process. Aramark's P.O. III encompasses this claim. (P.O.s to Liquidator's Complaint III ¶ 64.)

Guaranty Associations in this matter and we will sustain Aramark's P.O. in this regard.[24]

■ At this point, we must address the issue of this Court's jurisdiction over the claims of the Guaranty Associations. At argument before this Court en banc, the issue of the subject matter jurisdiction of this Court over the claims of the Guaranty Associations was raised. Subject matter jurisdiction is a non-waivable issue which may be raised by any party at any point during a proceeding. *Windrick v. Commonwealth,* 80 Pa.Cmwlth. 401, 471 A.2d 924, 926 (1984). Section 761(a) of the Judicial Code, 42 Pa.C.S. § 761(a), provides that the Commonwealth Court has jurisdiction over, *inter alia,* civil actions by the Commonwealth government. Aramark argues that the PA WC is not a Commonwealth entity, but is, rather, a fund administered by the Pennsylvania Insurance Commissioner (PA Commissioner),[25] per Section 3 of the Workers' Compensation Fund Security Act (Security Act), 77 P.S. § 1053,[26] and is under the custodianship of the Pennsylvania Treasurer per Section 10(1) of the Security Act, 77 P.S. § 1060(1). (P.O. to GAs' Complaint XVIII ¶¶ 202–10.) Thus, Aramark argues, in P.O. to the GAs' Complaint XVIII, that the PA WC is not able to sue in its own name.[27] However, the PA WC has appeared as a party in a number of cases. *See, e.g., Miles v. Van Meter,* 427 Pa.Super. 278, 628 A.2d 1159 (1993) (listing the PA WC as a defendant). Notably, in *Miles,* the Superior Court construed statutory language discussing the power of the PA Commissioner as applying to the PA WC. *Miles,* 628 A.2d at 1162. We, therefore, overrule P.O. XVIII and hold that the PA WC is a Commonwealth entity over whose claims this Court has jurisdiction pursuant to Section 761(a)(2) of the Judicial Code.

■ We note that our jurisdiction over the PA WC is concurrent with that of the courts of common pleas, pursuant to Section 761(b) of the Judicial Code ("The jurisdiction of the Commonwealth Court under subsection (a) shall be exclusive ... except with respect to actions or proceedings by the Commonwealth government ... where the jurisdiction of the court shall be *concurrent* with the several courts of common pleas." 42 Pa.C.S. § 761(b) (emphasis added)). In order to adjudicate the foreign Guaranty Associations' claims, this Court would need to exercise ancillary jurisdiction over those claims. However, the Court cannot assert ancillary jurisdiction over a matter unless it "is related to a claim or other matter otherwise within its *exclusive* original jurisdiction." 42 Pa.C.S. § 761(c) (emphasis added). While the claims of the foreign Guaranty Associations are related to the PA WC's claims, because this Court does not have exclusive jurisdiction over the PA WC's claims, but only has concurrent jurisdiction, we do not have ancillary original jurisdiction over the claims of the foreign Guaranty Associa-

---

24. Due to our resolution of P.O.s to Liquidator's Complaint I and III, we need not reach the remainder of Aramark's P.O.s regarding Liquidator's Complaint. Because this Court sustains P.O.s to Liquidator's Complaint I and III, all substantive claims in Liquidator's Complaint are dismissed.

25. Although not addressed by the parties, we note that the PA Commissioner is Liquidator.

26. Act of July 1, 1937, P.L. 2532, *as amended.*

27. Aramark also objects to the PA WC's standing to sue for sums paid for automobile and general liability claims. (P.O. to GAs' Complaint XVIX ¶¶ 211–23.) However, Guaranty Associations acknowledge that the PA WC is not seeking to recover such sums. We, therefore, overrule this P.O.

tions and must, therefore, decline to consider these claims.

■ We next address P.O. to GAs' Complaint XX, which asserts that, under the terms of the PA WC's governing statute, the PA WC is not permitted to seek reimbursement for claims paid to Aramark. The PA WC's governing statute provides, "[p]ayment of an award from the [PA WC] shall not give the commissioner of such fund any right of recovery against the employer." Section 11 of the Security Act, 77 P.S. § 1061(2). Aramark was an insured of Reliance, which is now an insolvent insurer. Aramark argues that the PA WC paid claims to Aramark and, therefore, pursuant to the plain language of the Security Act, the PA WC may not now sue Aramark to recover those sums.

■ When read in the context of the Security Act, Section 11 is intended to refer only to attempts to recover payments of *valid* claims. While there are no cases decided by the courts of this Commonwealth that are directly on point, cases from other states interpreting similar no-cause-of-action provisions have held that such provisions do not prevent a guaranty association from suing to recover sums paid out for non-covered claims. For example, in *South Carolina Property and Casualty Insurance Guaranty Association v. Wal–Mart Stores, Inc.,* 304 S.C. 210, 403 S.E.2d 625, 628 (1991), the South Carolina Supreme Court considered a case in which Wal–Mart Stores, Inc. (Wal–Mart) entered into an invalid contract for workers' compensation insurance with Transit Casualty Insurance Company (Transit). *Id.* at 626. The contract was invalid because Wal–Mart and Transit both knew that the premium rates were based on inaccurate payroll information from Wal–Mart. *Id.* Transit became insolvent, and Wal–Mart began submitting its workers' compensation claims to the South Carolina Property

and Casualty Insurance Guaranty (SC Guaranty). *Id.* The SC Guaranty began processing Wal–Mart's claims and paid thirteen of the claims. *Id.* After a federal court decision held that the contract for coverage between Wal–Mart and Transit was void, SC Guaranty sued Wal–Mart to recover "expenses incurred and payments made on behalf of Wal–Mart on the grounds that the claims were not 'covered' as required under the statute." *Id.* In deciding the case, the South Carolina Supreme Court considered a provision similar to the governing statutes at issue in this case, which states "[t]he [SC Guaranty] has no cause of action against the insured of the insolvent insurer for any sums it has paid out except the causes of action the insolvent insurer would have had if the sums had been paid by the insolvent insurer." S.C.Code Ann. § 38–31–90(1) (cited in *Wal–Mart Stores, Inc.,* 403 S.E.2d at 628). The South Carolina Supreme Court determined that, without a *valid* covered claim, this provision was not triggered. *Wal–Mart Stores, Inc.,* 403 S.E.2d at 628. We find the analysis in *Wal–Mart Stores, Inc.* persuasive and agree that Section 11 should be read as applying exclusively to valid claims, rather than including invalid claims. Moreover, in interpreting the Security Act, there is a strong public policy against preventing a guaranty association from recovering an erroneously paid claim, particularly if the erroneous payment was due to the conduct of the claimant. We, therefore, overrule this P.O. by Aramark.

■ Next, we address P.O. to GAs' Complaint XXI, contending that the non-duplication of recovery provision in the Security Act does not apply to Aramark's claims because Aramark was not the claimant under the CLP. Section 3 of the Security Act states that the purpose of the PA WC is to assure payments to persons

who are entitled to workers' compensation benefits from insolvent insurers for "valid claims ... remaining unpaid." 77 P.S. § 1053. Aramark argues that this provision does not require that coverage under another insurer be exhausted before recovery may be sought from the PA WC. Aramark also argues, in relation to this P.O., that an employer is not a claimant under workers' compensation law. In support, Aramark relies upon *Keystone Aerial Surveys, Inc. v. Pennsylvania Property & Casualty Insurance Guaranty Association,* 574 Pa. 147, 829 A.2d 297 (2003) as an example of the principle that only individuals can be "claimants" under Pennsylvania workers' compensation law. Aramark argues that, although it was the policyholder and the insured under the CLP, the "claimants" under the CLP for purposes of Section 3 are the workers' compensation or third-party claimants, not Aramark.

However, Section 3 makes no reference to "claimants," but rather to "claims." 77 P.S. § 1053. In addition, the language of Section 3 of the Security Act is unambiguous that it is meant to cover only *unpaid* claims. If, as the PA WC argues, claims that Aramark submitted to the PA WC were paid by the CLP as well, then those claims should not have been covered by the PA WC. *See Besack v. Rouselle Corp.,* 706 F.Supp. 385, 386 (E.D.Pa.), *aff'd* 879 F.2d 855 (3d Cir.1989) (under Pennsylvania workers' compensation law, where a third-party claimant recovers from another solvent insurer, the claim is not unpaid and is, therefore, not a covered claim).

In addition, given the allegation that Aramark is filing claims to the PA WC and is collecting or has collected under the

CLP for these same claims, we cannot say at this preliminary stage that it is not, in fact, the claimant under these policies. The legislative intent behind the Security Act appears to be to ensure that insureds or claimants who have no other recourse be able to recover under policies with an insolvent insurer, not to protect solvent insurers or to allow duplicative recoveries. We, therefore, overrule Aramark's P.O. on this point.

■ We next address P.O. to the GAs' Complaint XXII, which asserts that, no provision of the Security Act requires Aramark to exhaust the full $25 million coverage limits under the CLP before it may file claims with the PA WC. Aramark argues that, assuming the Security Act prohibits duplication of recovery, this would only permit the PA WC to reduce claims by the amount actually recovered from another source. Aramark argues that, because it only actually recovered $20.7 million from the CLP, it should not be required to exhaust the full $25 million coverage limit of the CLP before it may assert claims against the PA WC.[28] Again, we overrule this P.O.

■ The general rule is that, where an insured settles with an insurer for an amount less than the policy's limit, guaranty associations are entitled to reduce claims by the full policy limit. *A.W. Chesterton Co. v. Massachusetts Insurers Insolvency Fund,* 445 Mass. 502, 838 N.E.2d 1237, 1254–55 (2005); *Carpenter Technology Corporation v. Admiral Insurance Company,* 172 N.J. 504, 800 A.2d 54, 64 (2002); *Hasemann v. White,* 177 Ill.2d 414, 226 Ill.Dec. 788, 686 N.E.2d 571, 573 (1997). Further, Pennsylvania courts have

28. Aramark also argues that not all of the claims it has paid, and for which it has sought reimbursement from the PA WC, are covered under the CLP. (Aramark's Reply Memorandum of Law in Further Support of P.O. to GAs' Complaint at 13–17.) This is a combined question of fact and law that, without further development of the record, is not ripe for disposition.

held that a settlement with a solvent insurer precludes recovery from the state guaranty association because there has been no exhaustion of the solvent policy. *Burke v. Valley Lines, Inc.,* 421 Pa.Super. 362, 617 A.2d 1335, 1338 (1992). Moreover, the Guaranty Associations argue that the $20.7 million paid to Aramark by Inter–Ocean represented the present value of the CLP, (Guaranty Associations' Compl. ¶ 33); therefore, this leaves open the question of whether Aramark should be charged with receipt of the full amount of the policy where it settled for a lesser amount than the present value of the policy. We, therefore, overrule Aramark's P.O. on this point.

For the reasons stated above, we sustain Aramark's first and third P.O.s to Liquidator's Complaint and dismiss Liquidator's Complaint, we overrule Aramark's P.O.s numbers XVIII, XVIX, XX, XXI, XXII, and XXV to the Guaranty Associations' Complaint, and we dismiss all Counts of the Guaranty Associations' Complaint except for Counts VIII and XVII (the Counts relating to the PA WC).

### ORDER

**NOW,** December 9, 2011, the first and third Preliminary Objections of Defendant Aramark Corporation to the Complaint for Declaratory Judgment of Plaintiff Reliance Insurance Company in Liquidation are hereby **SUSTAINED,** and Plaintiff's Complaint is hereby **DISMISSED.** The Preliminary Objections of Aramark to Intervenor Guaranty Associations' Complaint numbered XVIII, XVIX, XX, XXI, XXII, and XXV in the above-captioned matter are hereby **OVERRULED.** All Counts, except for Counts VIII and XVII, of Intervenor Guaranty Associations' Complaint are hereby **TRANSFERRED** to the Court of Common Please of Philadelphia County. Aramark shall file its answer to the remaining Counts of Guaranty Associations' Complaint within thirty (30) days of the date of this Order. The Application of Liquidator for Leave to File a Post–Argument Submission and the Guaranty Associations' Application for Leave to File Post–Argument Submission in the above-captioned matter are hereby **GRANTED.**

### CONCURRING AND DISSENTING OPINION BY Judge LEAVITT.

I concur in the majority's dismissal of the Statutory Liquidator's complaint. I concur also in the majority's dismissal of the counts in the Intervenors' Complaint presented by the out-of-state intervening guaranty associations.[1] However, I would also dismiss the two counts presented by the intervenor, the Pennsylvania Workers' Compensation Security Fund (Pennsylvania Fund), without prejudice to its filing an amended complaint with a new jurisdictional statement.

Aramark purchased a series of insurance policies from Reliance Insurance

1. The Guaranty funds in California, Massachusetts, Nevada, New Hampshire, New Jersey, New York, Pennsylvania and Texas intervened. The State of New York has two guaranty funds: the New York Property/Casualty Insurance Security Fund and the New York Workers' Compensation Security Fund. Intervenors' Complaint, ¶¶ 9, 10. Both New York funds have intervened.

Pennsylvania also has two funds. Article XVIII of The Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, added by the Act of December 12, 1994, P.L. 1005, *as amended,* 40 P.S. §§ 991.1801–1820, creates the Pennsylvania Insurance Guaranty Association for the payment of covered claims arising from property and casualty insurance policies, other than workers' compensation insurance. The Pennsylvania Insurance Guaranty Association has not intervened in this action. The Pennsylvania Workers' Compensation Security Fund, which pays claims under workers' compensation policies to Pennsylvania residents, has intervened.

Company over the course of several years.[2] To prevent Aramark from moving those policies to an insurer with a stronger financial rating, Reliance arranged to have a contingent liability policy issued to Aramark that would cover whatever losses Aramark might suffer in the event Reliance would become insolvent. The policy was issued by Inter–Ocean Reinsurance Company Ltd.; provided Aramark up to $25 million in coverage; and was 100 percent reinsured by Reliance. In 2001, Reliance became insolvent and was placed into receivership by this Court in accordance with Article V of The Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, *as amended*, added by the Act of December 14, 1977, P.L. 280, 40 P.S. §§ 221.1–221.63. In accordance with Article V, the Court appointed the Insurance Commissioner as Statutory Liquidator of Reliance.

One of the principal undertakings of any insurance company receivership is to determine the amount and order of payments that will be made to the creditors out of the estate of the insolvent insurer. Policyholder creditors receive the highest priority of payment after estate administration expenses are paid. The Statutory Liquidator filed the instant declaratory judgment action to request the Court to fix the amount and priority of payment to be assigned to the claims filed by Aramark against the estate of Reliance. The Statutory Liquidator asserts that the coverage provided by Inter–Ocean has transformed Aramark from a policyholder creditor to a general creditor, a class of creditor that is

2. The Reliance policies covered Aramark for its workers' compensation liability, automobile liability and general liability for its United States operations. Intervenors' Complaint, ¶ 24.

3. When the intervenors were granted leave to participate in the proceeding initiated by the

not expected to receive any payment from the Reliance estate.

Thereafter, nine state guaranty funds, including the Pennsylvania Fund, intervened and filed their own complaint. They seek a declaratory judgment that they have paid claims to residents of their states that were not owed under the laws of their states because of Aramark's contingent liability policy from Inter–Ocean. They seek a declaratory judgment from this Court that Aramark has been unjustly enriched by the payments made by the guaranty funds. The intervenors make no claim against Reliance or the Statutory Liquidator.[3]

The majority dismisses the Statutory Liquidator's complaint, correctly I believe, because the proof of claim procedure in Article V for disposing of claims against the Reliance estate should be followed to decide the amount and priority of Aramark's claim against the Reliance estate. The next question is whether the Intervenors' Complaint can proceed on its own, without the Statutory Liquidator's claims.

The intervenors asserted the following as the basis for this Court's subject matter jurisdiction over their complaint:

> Jurisdiction and venue are proper in this Court pursuant to 42 [Pa.C.S.] § 761(a)(3) and Article V of the Insurance Act.

Intervenors' Complaint, ¶ 14. Section 761(a)(3) of the Judicial Code states as follows:

> Statutory Liquidator, this Court's subject matter jurisdiction over the Statutory Liquidator's claim against Reliance was not in doubt. The Judicial Code provides, expressly, that this Court has jurisdiction over matters arising under Article V, such as the Statutory Liquidator's instant action.

(a) The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

\* \* \*

(3) Arising under Article V. of the [A]ct of May 17, 1921 (P.L. 789, No. 285), known as "The Insurance Department Act of 1921."

42 Pa.C.S. § 761(a)(3). The intervenors have not identified any other basis for our jurisdiction to decide their complaint.

Intervenors' Complaint, with 18 counts, does not arise from Article V. Further, the complaint was filed against Aramark, not the Statutory Liquidator. Their complaint raises claims arising from the laws of nine different states that have set up guaranty funds to pay the claims of insolvent insurance companies, such as Reliance, for residents of their states. The intervenors seek a judgment from this Court that they have paid claims of residents of their states mistakenly, they believe, because under their respective laws, Aramark, not the guaranty fund, was liable. The relevant guaranty fund statutes, not Article V, govern these claims.[4]

A review of the legal claims of one non-Pennsylvania guaranty fund illustrates the jurisdictional problem with the Intervenors' Complaint. In Count V, the complaint alleges that the New Jersey Association has paid $370,503.59 to New Jersey residents with a third-party claim (against Aramark) under a Reliance policy. Intervenors' Complaint, ¶ 77. It then notes that a New Jersey claimant

shall be required to exhaust first his right under that other policy. *See* N.J.

Stat. § 17:30A–12(b)(2009). The New Jersey Association paid claims under Reliance policies without exhaustion of the [Contingent Liability Policy issued by Inter–Ocean].

Intervenors' Complaint, ¶ 78. The New Jersey Association requests a judicial declaration that Aramark must reimburse it for the $370,503.59 it has paid under the laws of the state of New Jersey. Each intervenor lodges a similar charge, *i.e.*, that its "applicable guaranty law" requires a judicial declaration that Aramark must reimburse the intervening state guaranty fund for claims it paid that should have been paid by Aramark. Each guaranty fund acknowledges in the complaint that its operations are "governed" by the laws of its state of domicile. Intervenors' Complaint, ¶¶ 4, 5, 6, 7, 8, 9, 10, and 12. For this Court to determine whether a claim was properly paid to an out-of-state claimant under the terms of an out-of-state statute would be akin to this Court deciding, for example, whether a Texas employee of Aramark is entitled to workers' compensation benefits under the Texas workers' compensation statute.

The out-of-state guaranty fund is not the Commonwealth government and neither is Aramark. For that reason, this Court lacks jurisdiction over the claims of the out-of-state guaranty funds. Accordingly, I agree with the majority's decision to dismiss the claims of the out-of-state guaranty associations.

However, I disagree with the majority's decision to allow the claims of the Pennsylvania Fund, set forth in Counts VIII and

---

4. Each guaranty fund law is different. Some provide unlimited coverage, coextensive with policy limits, and some cap their payments at $100,000, regardless of the actual loss or the amount of coverage provided in the policy. Some funds are triggered by an order of liquidation, and others are triggered by an insur-

er's mere financial "impairment." Some funds do not pay anything if the claimant or policyholder has substantial net worth, as defined in the applicable statute. Each guaranty fund is independent from the other and is governed solely by its own state's laws.

XVII of the Intervenors' Complaint, to go forward. The majority reasons, based on its review of the applicable statutes, that the Pennsylvania Fund is an instrumentality of the Commonwealth and, thus, this Court has jurisdiction.[5] The pleading does not support the majority's conclusion.

First, the Intervenors' Complaint does not allege that the Pennsylvania Fund is the Commonwealth. Rather, it describes itself as follows:

> The Pennsylvania Workers' Compensation Security Fund (the "Pennsylvania Fund") *is a non-profit, unincorporated legal entity* created and governed by Pennsylvania law. The Pennsylvania Fund is authorized to bring suit in its own name.

Intervenors' Complaint, ¶ 11 (emphasis added). The complaint goes on to assert:

> The Guaranty Associations obtain the funds needed to pay claims by assessing *member insurers*. Each insurer writing business in a particular state is required to be a member of that state's guaranty association. *Member insurers* recoup assessments through increased rates and premiums, and in certain states through premium tax offsets or policy surcharges.

Intervenors' Complaint, ¶ 20 (emphasis added) (citations omitted). In short, the complaint identifies the Pennsylvania Fund as an association of "member insurers," which are private insurance companies.

The Judicial Code does not give this Court jurisdiction over civil actions brought by private parties. Rather, our jurisdiction is limited to civil actions initiated:

> (2) By the Commonwealth government, including any officer thereof, acting in his official capacity, except eminent domain proceedings.

42 Pa.C.S. § 761(a)(2). The complaint does not allege that the Pennsylvania Fund is the Commonwealth government, and it does not assert that this Court's jurisdiction over the complaint of the Pennsylvania Fund arises from Section 761(a)(2) of the Judicial Code.

Second, as noted, the pleading of the Pennsylvania Fund offers a totally different basis for our jurisdiction, *i.e.*, 42 Pa. C.S. § 761(a)(3), which gives this Court jurisdiction over claims arising from Article V. The claim of the Pennsylvania Fund has nothing to do with Article V but, rather, the terms of its governing statute.

Because the facts as pled by the Pennsylvania Fund do not support the conclusion that it is an instrumentality of the Commonwealth, the Pennsylvania Fund should be directed to file a new complaint in which it states, with particularity, what it is and why this Court has jurisdiction over the claim that it has brought against a private party, *i.e.*, Aramark.[6]

---

**5.** It does not follow, necessarily, that the administrator, *i.e.*, the Insurance Department, and the Pennsylvania Fund are one and the same. Insurance companies use third party administrators to act on their behalf, but they are distinct entities. Notably, in *Miles v. Van Meter*, 427 Pa.Super. 278, 628 A.2d 1159 (1993), a case cited by the majority, the Pennsylvania Fund was sued in the Court of Common Pleas of Philadelphia County, as one would expect for a private actor defendant, and not in the Commonwealth Court.

**6.** The majority asserts that this Court has concurrent jurisdiction over the Pennsylvania Fund along with the courts of common pleas. This is an issue that should be addressed in a new pleading. I do not know whether or not the majority's premise is correct. The majority dismisses Aramark's assertion that the Pennsylvania Fund is a bank account, not a legal person, but without analysis. The nature of the Pennsylvania Fund and its governance could be addressed in a new pleading.

Further, I do not agree with the majority's analysis of Aramark's demurrer to the Pennsylvania Fund's claims. In disposing of the demurrer, the majority construes the Workers' Compensation Security Fund Act, Act of July 1, 1937, P.L. 2532, *as amended*, 77 P.S. § 1051–1066, in a way that I do not accept. Effectively, the majority decides the merits of the dispute at a very early stage in the proceeding, and it is not necessary to do so.

The majority dismisses the objection raised by Aramark that it cannot be required to reimburse the Pennsylvania Fund for payments the fund made to injured workers residing in Pennsylvania. However, the statute could not be clearer on this point. Section 11(2) of the Act states:

> (2) Payment of an award from the fund shall not give the commissioner of such fund any right of recovery against the employer.

77 P.S. § 1061(2).

The Pennsylvania Fund, created in 1937, is one of the oldest in the nation. It predates the other intervening guaranty funds that were created by statutes based upon a model law of the National Association of Insurance Commissioners. The Pennsylvania Fund was established to ensure the uninterrupted flow of benefits to injured workers. The Pennsylvania Fund pays the first dollar of every claim of an injured worker, and it pays the entire lifetime benefit owed to an injured worker under the Workers' Compensation Act.[7] There is no policy limit on the amount owed by the insurer, and there is no limit on the amount paid by the Pennsylvania Fund on behalf of an insolvent insurer.

The Pennsylvania Fund did not, as stated by the majority, pay "claims to Aramark." Op. at 968. The Intervenors' Complaint does not so allege. The only claim that could be paid by the Pennsylvania Fund is one presented by an injured employee, not an employer.

When an employer in Pennsylvania purchases a policy of workers' compensation insurance, it transfers to the insurer all liability for the payment of workers' compensation claims covered by that policy. The employer's liability is not revived when the insurer becomes insolvent. Further, the employer that transferred its liability for workers' compensation benefits to an insolvent insurer does not participate, in part or in whole, in the Pennsylvania scheme of protection for injured workers whose claims were expected to be paid by an insolvent insurer.[8]

By contrast, other states, such as Texas, do require employer participation in the guaranty fund scheme. Texas pays all workers' compensation claims upon the insurer's insolvency, but it expects reimbursement in some cases. The Texas Insurance Code provides:

> (a) The [Texas Property and Casualty Insurance Guaranty Association] is entitled to recover:
>
>   \*    \*    \*
>
> (2) the amount of a covered claim for workers' compensation insurance benefits and the costs of administration and defense of the claim paid under this chapter from an insured employer whose net worth on December 31 of the year preceding the

---

7. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2708.

8. By contrast, coverage provided by Pennsylvania Insurance Guaranty Association is limited to $300,000 on a policyholder claim. The policyholder must pay any remainder owing to the third party claimant.

date the insurer becomes an impaired insurer exceeds $50 million.

Tex. Insurance Code Ann. § 462.308(a) (West 2011). Thus, if Aramark's net worth exceeds $50 million, then it will have to reimburse the Texas guaranty fund for every workers' compensation claim paid to an Aramark employee in Texas. This would be an Aramark loss caused by the Reliance insolvency, and it is a loss for which Inter–Ocean would have liability to Aramark under the contingent liability policy.

Aramark could not have a loss in Pennsylvania caused by the Reliance insolvency, at least with respect to the workers' compensation claims of its Pennsylvania employees. This is because those claims will be paid in the exact amount they would have been paid by Reliance. Reliance's total liability for Aramark's workers' compensation claims was transferred to the Pennsylvania Fund, which cannot recover from Aramark under 77 P.S. § 1061(4).[9] Likewise, Aramark should not have a claim against the Reliance estate with respect to workers' compensation claims in Pennsylvania.

I would sustain Aramark's preliminary objection to the complaint of the Pennsylvania Fund without prejudice to its filing a new or amended complaint that provides a new jurisdictional statement. At present, the allegations in the Intervenors' Complaint defeat any possibility of holding the Pennsylvania Fund's complaint to be one filed by "the Commonwealth government." 42 Pa.C.S. § 761(a)(2). The new pleading could better explain the Pennsylvania Fund's theory for recovering from Aramark the amount it has paid to Aramark

employees residing in Pennsylvania as a result of the Reliance insolvency.

Judge McGINLEY joins in this concurring and dissenting opinion.

9. Aramark is liable for premium and for deductibles, but this was true even if Reliance had not become insolvent. Those would not

be "losses" payable under the Inter–Ocean contingent liability policy.